### J. A. WHITE v. LILLIE WHITE.

#### No. 2858. Decided June 30, 1917.

**1.—Constitutional Law—Trial by Jury—Insanity.**

Inquest of insanity is a civil, not a criminal proceeding; and trial thereof without a jury, under State laws, is not prohibited by the Sixth Amendment to the Constitution of the United States. That article relates only to criminal actions. (P. 579.)

**2.—Same.**

The Seventh Amendment to the Constitution of the United States refers only to proceedings in Federal courts, and has no application to an inquest of insanity under State laws. (P. 579.)

**3.—Same.**

The Fourteenth Amendment to the Constitution of the United States does not prohibit trials in State courts without a jury, where such trial is in accordance with the due course of the law of the land, which in such case is regulated by the State. (P. 579.)

**4.—Same—Constitution of Texas—Act of 1913.**

The Act of April 8, 1913, Laws, 33d Leg., ch. 163, pp. 341-7, amending ch. I, Title 10, Rev. Stats. 1911, providing for trial of inquests of insanity by a

commission of physicians designated by the county judge, by whose finding the person examined might be restrained in his liberty and deprived of control over his property, is wholly void, being in conflict with the provision of the Constitution which guarantees the right of trial by jury. (Constitution, art. 1, secs. 15, 19, 29.)    (Pp. 579-587.)

### 5.—Trial by Jury Defined.

What constitutes a trial by jury, as the term is used in the Constitution of Texas, is defined. Held that such trial of the issue of insanity is secured by the Constitution; and that trial by a commission of physicians selected and proceeding in accordance with the Act of April 8, 1913, does not, in various particulars enumerated, meet the requirements of a trial by jury as that term is there used. (Pp. 580-587.)

### 6.—Same.

The constitutional prohibition preserving the right of trial by jury (Const., art. 1, sec. 15) is to be construed, not as conferring that right, but as preserving it as recognized by previously existing laws. Former legislation establishing the right in cases of inquest of insanity reviewed.    (Pp. 581-583.)

### 7.—Cases Distinguished, Etc.

Ex parte Singleton, 72 Texas Cr., 172; Pittman v. Byers, 51 Texas Civ. App., 83; and various cases in Federal and other State courts discussed and distinguished.    (Pp. 584-587.)

### 8.—Insanity—Presumption.

Failure of the respondent in an inquest of lunacy to deny, on habeas corpus proceedings for his enlargement, that he was a lunatic is immaterial, the presumption being that he was of sound mind, where the proceedings adjudging him insane were held under an unconstitutional and void statute.    (P. 587.)

### 9.—Habeas Corpus—Insanity—Judgment.

Where affidavit in accordance with law and requiring an inquest as to a person's sanity had been made, the respondent was not entitled to be set at liberty though the proceedings held thereunder were under an unconstitutional and void statute. He should be remanded to custody for a trial of the issue according to law. The court in here so ordering, fix a definite time in which such inquest must be prosecuted, or the relator set at liberty.    (P. 587.)

### 10.—Unconstitutional Act—Former Law.

The Act of April 8, 1913, Laws, 33d Leg., ch. 163, pp. 341-7, being wholly void, the trial of one charged to be insane should be had under the former law (ch. 1, Title 10, Rev. Stats., 1911), that being still in force and unrepealed by the unconstitutional statute attempting to alter it.    (P. 587.)

Error to the Court of Civil Appeals for the Eighth District in an appeal from El Paso County.

Being restrained of her liberty by her husband, J. A. White, and others, under an adjudication that she was an insane person, Mrs. Lillie White brought habeas corpus, alleging that the proceeding, which was under the Act of April 8, 1913, was void because of the unconstitutionality of the Act. Her claim of the invalidity of the Act was denied by the trial court, but sustained on her appeal, whereupon J. A. White obtained writ of error.

*C. W. Croom, T. A. Falvey, Waters Davis, J. M. Goggin,* and *Breedlove Smith,* for plaintiff in error.—The Act is not violative of article

1, section 15, of the State Constitution. Dennee v. McCoy, 4 Ind. Ter., 233, 69 S. W., 858; Traction Co. v. Hof, 174 U. S., 1; Ex parte Singleton, 72 Texas Cr., 122, 161 S. W., 123; Chavannes v. Priestly, 80 Iowa, 361; In re Brezee (Iowa), 48 N. W., 991; Black Hawk Co. v. Springer, 58 Iowa, 417; Dowdell, Petitioner (Mass.), 61 Am. St., 290; State v. Linderholm (Kan.), 114 Pac., 857; In re Creswell (R. I.), 13 A. & E. Ann. C., 874; Simon v. Craft, 182 U. S., 427; Pittman v. Byars, 51 Texas Civ. App., 83, 112 S. W., 102; In re Chow Goo Pooi, 25 Fed., 77; In re Clark, 86 Kan., 539; Cooley on Constitutional Limitations, 3d ed., note p. 410.

The proceeding in this case is merely an inquest and not a "trial," or civil or criminal case in the sense of the Constitution, but is, nevertheless, due process of law. State v. Linderholm, 114 Pac., 857; Dowdell, Petitioner, 169 Mass., 387, 61 Am. St., 290; In re Croswell (R. I.), 13 Am. & Eng. Ann. Cases, 874; In re Clark, 86 Kan., 539, 121 Pac., 492; United States In re Chow Pooi, 25 Fed., 77; Cooley on Constitutional Limitations, 3d ed., note p. 410; Dennee v. McCoy, 4 Ind. Ter., 233, 69 S. W., 858.

The sixteenth amendment to the Constitution of the United States applies exclusively to the jurisdiction exercised by the United States government through Congress or judiciary, and places no limitation upon the powers of the State. Ohio v. Dollison, 194 U. S., 447; West v. Louisiana, 194 U. S., 264; Brown v. New Jersey, 175 U. S., 174; Williams v. Hert, 110 Fed., 168.

Article 7 of the amendments to the United States Constitution relates only to trials by courts sitting under the authortiy of the United States. Ohio v. Dollison, 194 U. S., 447; Bolln v. Neb., 176 U. S., 87; Brown v. Walker, 161 U. S., 606.

Under the common law there was no absolute right to trial by jury in insanity cases. Nobles v. Georgia, 168 U. S., 398, 42 Law Ed., 515.

Trial by jury has never been affirmed to be a necessary requisite of due process of law. Maxwell v. Dow, 176 U. S., 603; Walker v. Sauvinet, 92 U. S., 92; Montana Co. v. St. Louis, etc., Co., 152 U. S., 171; Iowa Central Ry. Co. v. Iowa, 160 U. S., 392; Simon v. Craft, 182 U. S., 427; in the matter of William Ross, 38 La. Ann., 523.

Legal proceedings enforced by public authority, though newly devised in the discretion of the Legislature, due process of law. Reetz v. Michigan, 188 U. S., 505; Palmer v. McMahon, 133 U. S., 660; Ex parte Scudamore, 46 So., 279.

The notice to the appellant was sufficient. Reetz v. Michigan, 188 U. S., 505; Simon v. Craft, 182 U. S., 427; In re Clark, 86 Kan., 539; Ex parte Scudamore, 46 So., 279.

Even should the district judge before whom the habeas corpus proceeding was held, have been of the opinion that the asylum Act complained of was unconstitutional, it would, nevertheless, have been his duty to have refused to discharge the applicant as it appeared from the respondent's answer to the writ of habeas corpus (which was not

controverted or impeached), that the applicant was insane, needed restraint, and was being restrained and cared for by her husband for the protection of herself and the public.  Crowley v. Christensen, 137 U. S., 86; State v. Linderholm, 114 Pac., 857; Chavannes v. Priestly, 80 Iowa, 361; In re Clark, 86 Kan., 539.

*Hudspeth & Dale,* for defendant in error.—The statute under which applicant was held is null and void and unconstitutional, because same deprives her of her constitutional right of a trial by jury, and further deprived her of due process of law.  The following provisions of the Constitution of Texas:  Sec. 13, art. 1; sec. 19, art. 1; sec. 29, art. 1; sec. 1, art. 5.  The following provisions of the United States Constitution:  Art. 6 of the amendments; art. 7 of the amendments; sec. 1 of art. 14 of the amendments; Henderson v. Beaton, 52 Texas, 29; Stone v. Brown, 54 Texas, 330; Mulhern v. Grove, 111 Mich., 528, 70 N. W., 15; State v. Guilbert, 56 Ohio St., 575, 47 N. E., 551; People v. Hayne, 83 Cal., 111, 23 Pac., 1; In re Supreme Court Commissioners, 37 Neb., 655, 56 N. W., 298; Janesville Cotton Mfg. Co. v. Ford, 55 Wis., 197, 12 N. W., 377; 8 Cyc., 823-824.

The Act of the Thirty-third Legislature (General Laws 1913, p. 341) is void as violative of section 15, article 1 of the State Constitution.  Sec. 15, art. 1, Const. of the State of Texas; Cockrill v. Cox, 65 Texas, 674; Davis v. Davis, 34 Texas, 23; Girdner v. Bryan, 94 Mo. App., 27, 67 S. W., 699; McGinty v. Carter, 48 N. J. L., 113, 3 Atl., 78; Whitehurst v. Coleen, 53 Ill., 247; Hathorne v. Panama Park Co., 44 Fla., 194, 32 So., 812; Pitman v. Byars, 51 Texas Civ. App., 83, 112 S. W., 102; Sporza v. German Savings Bank, 84 N. E., 406; State v. Colb, 104 Pac., 362; State v. Holtcamp (Mo.), 138 S. W., 521; Wabash Railroad Co. v. Drainage & Levee Dist., 62 N. E., 679; Bank v. Cooper, 24 Am. Dec., 517; Ross v. Irving, 14 Ill., 171; Townsend v. Radcliffe, 63 Ill., 10; Swart v. Kimball, 5 N. W., 635; 24 Cyc., 175, 185.

The attempted investment of the commission with judicial powers, together with the provisions of the statute denying the right of trial by jury, is a deprivation of liberty without due process of law.  Sec. 1, art. 14, of amendments to the Constitution of the United States; sec. 13, art. 1, Constitution of Texas; sec. 19, art. 1, Constitution of Texas; sec. 29, art. 1, Constitution of Texas; sec. 1, art. 5, Constitution of Texas; sec. 16, art. 5, Constitution of Texas; 6 Ruling Case Law, sec. 158; Kennedy v. Pearson, 109 S. W., 280; State v. Blaisdell, 132 N. W., 769; 6 Ruling Case Law, sec. 70.

The only notice provided for in the statute is involved in the arrest of the insane person, and a careful reading of the statute would reveal that no other or subsequent notice of any kind or character is provided for, and the proceeding may be in fact as well as in name entirely ex parte.  Sec. 1, art. 14, of the amendments to the Constitution of the United States; sec. 13, art. 1, Constitution of Texas; sec. 19, art. 1, Constitution of Texas; sec. 29, art. 1, Constitution of Texas; Re Lam-

bert, 66 Pac., 851; Hunt v. Searcy, 167 Mo., 158, 67 S. W., 206; Re Allen, 26 L. R. A. (N. S.), 223.

MR. JUSTICE HAWKINS delivered the opinion of the court.

Is the lunacy statute which was enacted by the Thirty-third Legislature, Acts 1913, chapter 163, pages 341-347, amending chapter 1, title 10, Revised Statutes, 1911, unconstitutional?

That is the main question in this habeas corpus proceeding, in which the District Court of El Paso County, Thirty-fourth Judicial District, upheld said Act as valid, but in which our Court of Civil Appeals for the Eighth Supreme Judicial District declared it void. 183 S. W., 369.

Under the provisions of said Act, and upon the unanimous report of "six commissioners," all of whom were physicians, and without a trial before a court or a common law or a statutory jury, defendant in error, Mrs. Lillie White, wife of plaintiff in error, was adjudged by the county judge of El Paso County to be a lunatic, the judgment ordering that she be conveyed to one of the lunatic asylums of the State for restraint and treatment. Thereafter, under an approved statutory bond of the husband and his sureties, it was ordered that she be delivered "into the care and custody of the said J. A. White as provided by law."

Subsequently, her attorney filed, and presented to said District Court, her petition for a writ of habeas corpus, alleging that she was being illegally restrained of her liberty and confined by the sheriff, the constable, and said J. A. White, by virtue of proceedings instituted under said Act, in said County Court, and before the county judge of El Paso County, and that said Act is null and void in that it is "violative of the provisions of the Constitution of the United States prohibiting the taking of life, liberty or property without due process of law, and violative of the provisions of the Constitution of the State of Texas guaranteeing to your petitioner that her liberty shall not be taken from her without due process of law, and guaranteeing to her the right of trial by jury, as contemplated by the framers of the Constitution."

The writ issued. J. A. White answered, stating, in substance, that pursuant to said proceedings in lunacy, and bond, relator, his wife, was then in his custody "under reasonable restraint for the purpose of having her cared for and treated for her mental disorder and restrain her from committing injury to herself or others," and that "she is in fact of unsound mind, and liable, if not restrained, to do herself and others great injury."

The record sets out no answer by the sheriff or constable; however, the order denying the writ recites that they and J. A. White made due return of said writ, and as the opinion of the Court of Civil Appeals states, "it developed on the habeas corpus hearing that appellant was being guarded by deputies from Constable Montoya's office, Mon-

toya having answered that he held appellant by virtue of a warrant for her arrest issued out of the Justice Court of said county."

Upon the hearing relator was remanded to the custody of her husband; whereupon she appealed to said Court of Civil Appeals.

Therein her attorneys insisted that said Act is unconstitutional for the reasons above mentioned, and because it attempts to confer judicial power upon said commissioners, and that, therefore, appellant should be set at liberty. J. A. White there contended, first, that said Act is valid, and, second, that, even if it is unconstitutional, it was the duty of the District Court to affirm the judgment which declared respondent to be a lunatic, "as it appeared from the respondent's answer to the writ of habeas corpus (which was not controverted or impeached), that the applicant was insane, needed restraint, and was being restrained and cared for by her husband for the protection of herself and the public."

That court held, in substance (1) that, in their relation to jury trials, the Sixth, Seventh and Fourteenth Amendments are inapplicable; (2) that the "judicial power" of the State is not lodged in the "commission" prescribed by said Act, in such manner or extent as to render the statutory proceedings invalid as not affording "due process of law," or "due course of the law of the land"; and (3) that the notice prescribed by said Act was sufficient; but that said Act denied the right of "trial by jury" guaranteed by section 15, article 1, of our State Constitution, that right having previously existed. However, holding that a proper affidavit charging defendant in error with insanity had been filed, that court so modified the judgment below as to remand her to the sheriff of the county of her residence for a reasonable time, for proceedings under the old law, and, as so modified, affirmed it. A motion for a rehearing was overruled, and the husband appealed to this court.

The case presents here no issue as to the regularity of the proceedings if the statute is valid. The questions for our decision are these: (1) Is the Act valid? (2) If the Act be held void, what is the proper disposition to be made of Mrs. Lillie White?

The articles of the Revised Statutes which the Act purports to amend relate to lunatic asylums and other asylums, and provide for restraint and care of insane persons, etc.

The following presents the most material features of said amendatory Act, some of its provisions being omitted:

Under the head of "Judicial Proceedings in Cases of Lunacy," it provides, in substance:

Art. 150. For the institution of such proceedings by filing an affidavit "with any county judge" or "before any justice of the peace," charging that the person therein named is a "lunatic," or is "non compos mentis," and that the welfare of such person or of others requires that such person be placed under restraint or treatment, or that such person is "a convict confined in the State penitentiary," such

affidavit, if made before a justice of the peace, to be transmitted to the county judge, and for issuance of a writ for the apprehension of such person, returnable to the county judge, and for docketing the affidavit on the probate docket as an ex parte proceeding, naming such person as respondent.

Art. 151.  For the style and address of the writ, and for service thereof by reading it to the person named therein and by delivering a copy thereof to such person, and also for taking him into custody, and for having him at such times and places as may be directed by the commission provided for, unless some other person shall, by bond, undertake his care and restraint and his appearance throughout such proceedings, etc.

Art. 152.  For appointment by the county judge of "a commission to be composed of six persons . . . which . . . shall investigate and determine the allegations in said affidavit," . . . to be composed in whole or in part of physicians, in a stated ratio to the population of the county, except that "in any county as many of said six commissioners shall be physicians as may be possible for the county judge to obtain thereon, regardless of population."

Art. 153.  For administration to such commissioners of an oath to make due investigation into the allegations contained in said affidavit and a true report thereof. ·

Art. 154.  For organization of such commission by election, by its members, of one of them as chairman, whereupon they shall "proceed to enter upon an investigation of the allegations of said affidavit," a majority to fix "places and times of hearing any evidence they or either of them or their counsel, may desire thereon," and for issuance of process for witnesses.

Art. 155.  That the county attorney shall appear and represent the affiant; that the respondent shall also be entitled to counsel, and if the respondent has no counsel the county judge shall appoint counsel for him; and that the commission shall notify such counsel of all times and places fixed for the hearing of testimony.

Art. 156.  That "said commission need not remain together at any time, but a majority of same must be present at the hearing of any testimony, . . . but each member of said commission shall personally examine the respondent"; that each commissioner shall have power to administer oaths, compel attendance of witnesses and punish for contempt; for punishment of false swearing or perjury before said commissioners or either of them; and that said commission "shall conclude its investigation within ten days from its organization, and upon finishing its investigation as determined by a majority thereof, shall file with the county clerk a report of its findings, which report shall be read by the county judge to the respondent in the presence of a majority of said commission, and which report shall state (a) whether or not the respondent is of unsound mind, and (b) if the respondent is of unsound mind whether or not he should be placed under treatment

for such mental condition, and (c) if he is of unsound mind, whether or not he should be placed under restraint; and if the findings of the commission, or a majority thereof, are as to the preceding matters in the negative, nothing further in the report shall be made; but if the first and either one of the second and third matters are in the affirmative, by said commissioners or a majority thereof, then the report shall further show (d) the age and nativity of the respondent, and (e) a general summary of the nature, extent and duration of such person's mental unsoundness, and (f) whether or not insanity is hereditary in his family, and (g) whether or not the respondent is possessed of any estate exempt from forced sale, and if so, of what it consists, and its estimated value, and if the report shows that the respondent is possessed of no estate exempt from forced sale, it shall further show what persons there are, if any, who are liable for his support; and such report shall contain (h) such further observations as a majority of the commission may deem pertinent."

Art. 159. That "if subdivisions a, b and c of such report be concurred in by a majority of said commission, judgment shall thereupon be pronounced by the county judge in the presence of the respondent, as follows: If the majority report shows that the respondent is not of unsound mind, or that he is of unsound mind but that it is not necessary that he be placed under treatment or restraint, the county judge shall pronounce judgment that the respondent be discharged. If subdivisions a, b and c of said report be concurred in by a majority of said commission and such report shows that the respondent is of unsound mind and that he should be placed under treatment or restraint, judgment shall be pronounced, in the presence of respondent, adjudging the respondent to be a lunatic and ordering him to be conveyed to one of the lunatic asylums of the State for restraint and treatment. If three of said commissioners report one way on subdivisions a, b and c, and three report the other way, the county judge shall pronounce judgment in the presence of respondent that the respondent be discharged. Whatever judgment (that) is pronounced shall be entered by the county judge on the docket in such proceedings."

Art. 160. That "if the report of a majority of said commissioners shows that the respondent is possessed of an estate exempt from forced sale, or that some person is legally liable for his support the county attorney shall at any time thereafter, upon the request of the superintendent of any lunatic asylum of the State, cite the guardian of the estate of such lunatic, or other person liable for his support, to appear at some regular term of a court of the county of such adjudication having jurisdiction of the amount involved, then and there to show cause why the State should not have judgment for the amount due it for the support and maintenance of such lunatic; and if sufficient cause be not shown, judgment may be entered against such guardian

or person so cited for the amount found to be due the State, which judgment may be enforced as in other cases. The State in such cases shall in no instance recover more than five dollars per week for the support and maintenance of any lunatic, and the certificate of the superintendent of the lunatic asylum as to the amount due the State shall be sufficient evidence to authorize the court to render judgment."

Art. 161. For conveyance of the respondent to some specified lunatic asylum of the State, or for his care and treatment by some other person under bond and for setting aside the judgment of lunacy when such lunatic is discharged from the asylum as cured.

Art. 163. For fees, in stated amounts to be allowed by the Commissioners' Court, of county clerk, sheriff or constable, county attorney, counsel appointed for respondent, of each "commissioner," of the person conveying the lunatic to the asylum, and of the guards and female attendant, if any, "provided that such fees shall not be allowed except to the commissioners, unless the respondent has been adjudged insane."

Art. 164. That the amount of said fees be reimbursed to the county out of the estate of the respondent when the report of the commissioners shows that he is possessed of an estate exempt from forced sale, or by the person liable for the support of the respondent, and that "if same be not reimbursed to the county, then the county attorney shall cite the guardian of the estate of such lunatic, or other person liable for his support, to appear at some regular term of a court of the county of such jurisdiction, having jurisdiction of the amount involved, then and there to show cause why the county should not have judgment for the amount of fees paid by the county in such lunacy proceeding; and if sufficient cause be not shown, judgment may be entered against such estate or other person so cited, for the amount of such fees so paid out by the county, which judgment may be enforced as in other cases."

In addition to the effects of the adjudication that the respondent is insane, relating to payment of fees, support, etc., and by force of other and pre-existing statutes, under a valid judgment declaring a person insane, a guardian may be appointed to take charge of his estate, both real and personal, and, for certain purposes and under proper proceedings and orders of court, to sell all such property. A receiver of such property may be appointed. So long as such judgment remains in force, the person thereby declared insane can not make legal disposition of his property. Rev. Stats., title 64; also, art. 3609. A lunatic may not vote. Const. Texas, art. 6, sec. 1. Nor is this list of consequences complete.

The Act should be upheld by the courts unless it is clearly unconstitutional.

It is contended here, in behalf of defendant in error, that the Act is repugnant to the Sixth, Seventh and Fourteenth Amendments of the Constitution of the United States in that it denies the right of trial by jury.

The Constitution of the United States does not expressly guarantee the right of trial by jury in any State court in any character of case.

The Sixth Amendment is not applicable to this case because it relates to (a) only criminal prosecutions; (b) in courts of the United States. Brown v. New Jersey, 175 U. S., 174, 44 L. Ed., 119, 20 Sup. Ct., 77; West v. Louisiana, 194 U. S., 258, 48 L. Ed., 965, 24 Sup. Ct., 650.

Proceedings under said Act of 1913 are of a civil, and not of a criminal, nature. Insanity is not a crime; in contradistinction it is a disease. Defendant in error was not charged with any violation of law. Legate v. Legate, 87 Texas, 248, 28 S. W., 281; Ex parte Singleton, 72 Texas Cr., 122, 161 S. W., 123; In re Croswell, 28 R. I., 137, 13 Ann. Cas., 874, 66 Atl., 55.

In the Legate case it was said: "It is the *cause* of restraint which determines whether the proceeding to *remove* the restraint be a criminal or a civil case." Likewise it is the nature of the complaint which determines whether the action is a civil or a criminal action.

The Seventh Amendment "relates only to trials in the courts of the United States." Walker v. Sauvinet, 92 U. S., 90, 23 L. Ed., 678; Edwards v. Elliott, 21 Wall., 557, 22 L. Ed., 487; Pearson v. Yewdall, 95 U. S., 294, 24 L. Ed., 436; Ohio v. Dollison, 194 U. S., 447, 48 L. Ed., 1062, 24 Sup. Ct., 703; Bolln v. Nebraska, 176 U. S., 83, 44 L. Ed., 382, 20 Sup. Ct., 287.

The Fourteenth Amendment is not directly contravened by the provisions of the Act which substitute a "commission" for a jury, nor do those provisions at all infringe upon it if they are in accord with the due course of the law of the land.

"A trial by jury in suits at common law pending in the State courts is not, therefore, a privilege or immunity of national citizenship, which the States are forbidden by the Fourteenth Amendment to abridge. A State can not deprive a person of his property without due process of law; but this does not necessarily imply that all trials in the State courts affecting the property of persons must be by jury. This requirement of the Constitution is met if the trial is had according to the settled course of judicial proceedings. Murray's Lessee v. Hoboken L. & I. Co., 18 How., 280." Due process of law is process according to the law of the land. This process in the States is regulated by the law of the State. See, also, Hurtado v. California, 110 U. S., 516, 28 L. Ed., 232, 4 Sup. Ct., 111; Bolln v. Nebraska, 175 U. S., 83, 44 L. Ed., 382, 20 Sup. Ct., 287.

The validity of said Act is assailed upon the additional grounds that it contravenes the following provisions of the Constitution of Texas:

"The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Bill of Rights, art. 1, sec. 15.

"No citizen of this State shall be deprived of life, liberty or prop-

erty, . . . except by the due course of the law of the land." Id., art. 1, sec. 19.

"To guard against transgressions of the high powers herein delegated. we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions shall be void." Id., art. 1, sec. 29.

Under the quoted provisions of our Bill of Rights it is contended, in behalf of the defendant in error, that she was entitled to, but was denied, trial by jury.

We sustain that contention. The right to a jury trial was not waived, but was asserted seasonably.

A trial by jury means something more than a hearing before a commission such as that prescribed by said Act. With us, in civil cases, it means a due and orderly trial before the statutory number of men, properly qualified for such jury service, impartial, residing within the jurisdiction of the court, drawn and selected according to statute, duly empaneled under the direction of a court of competent jurisdiction, and sworn to render an impartial verdict according to the law and the evidence, the hearing to be in the presence and under the supervision of a court duly authorized and empowered to rule on the evidence, and, except in courts of justices of the peace, to charge on the law of the case, and to set aside the verdict if, in the opinion of the court, it is contrary to the law and the evidence. Capital Traction Co. v. Hof, 174 U. S., 13, 43 L. Ed., 873, 19 Sup. Ct., 580, citing 41 N. H., 550; 24 Cyc., 98.

A duly constituted jury is an "integral part of the court." Mascall v. Commrs., 122 Ill., 623, 14 N. E., 47; 24 Cyc., 98.

Obviously the commission is not a jury. The statute does not so designate it. The manner of its selection, and its composition, are essentially different from that of a jury, under other statutes, for the trial of other civil cases. The judge of the court does not rule upon the admissibility of the evidence, and, it seems, need not be present while it is being adduced. No one commissioner need hear all the evidence. Many of the functions of the commission are widely different from those of a jury. The findings of the commission are final, and are conclusive of the issue as to the sanity of the respondent. They may not be set aside by the court or judge. Moreover, upon the findings of the commission, a judgment of a stated character must be entered; and from such judgment the respondent can in no event appeal, and, consequently, can not have a jury trial in the District Court. Cockrill v. Cox, 65 Texas, 669.

The right to trial by jury is one which, from time immemorial, has been distinctly recognized in the jurisprudence of many nations. As it exists with us, it is traced through Magna Charta. Blackstone's Com.; Proffatt's Jury T., sec. 24; 24 Cyc., 101.

Ever since that pre-existent right was enshrined, in substance, in

that bulwark of human liberty it has held a sacred place in English and American history, and has been embodied, in one or another form, in the organic law of every American State; yet, in certain respects, its precise scope and effect, as worked out and declared by the courts of various States, has been far from uniform, and especially is that true in its relation and application to persons of unsound mind.

The fundamental and settled principle of construction relative to constitutional guarantees of the right of trial by jury have been succinctly stated thus:

"The provisions of the State Constitutions, however worded, are uniformly construed as not conferring a right to a trial by jury in all classes of cases; but merely as guaranteeing the continuance of the right unchanged as it existed either at common law or by statute in the particular state at the time of the adoption of the Constitution. In cases where the right existed prior to the Constitution, it can not be denied, and this applies to cases of a similar character arising under statutes enacted subsequently to the adoption of the Constitution." 24 Cyc., pp. 101-102, and cases cited.

Under said provisions of our State Constitution, and especially under the provisions that "the right of trial by jury shall remain inviolate," which language has formed a part of every Constitution of this State and of the Constitution of the Republic of Texas as well, and of many Constitutions of our sister States, with a well established import and meaning, the defendant in error clearly was entitled to a trial by jury, in the full constitutional sense, if that practice prevailed in this State, according to then existing laws, at the time of the adoption of said provisions as portions, of our present State Constitution of 1876.

In Cockrill v. Cox, supra, the rule was stated thus, by this court, through Mr. Justice Robertson:

"A provision preserving the right of trial by jury, expressed in substantially the same language, it is said, is to be found in all the State Constitutions, and it has uniformly been construed to perpetuate the right in the cases in which it exists, under the laws in force and the practice prevailing at the date of the adoption of the particular Constitution. Cooley, Const. Lim., 506." See, also, Taylor v. Boyd, 63 Texas, 541; Central & Montg. R. R. Co. v. Morris & Crawford, 68 Texas, 49, 3 S. W., 457; Tolle v. Tolle, 101 Texas, 33, 104 S. W., 1049; Davis v. Davis, 34 Texas, 24; Loving v. Hazelwood (Texas Civ. App.), 184 S. W., 355; Pittman v. Byars, 51 Texas Civ. App., 83, 112 S. W., 102; Sporza v. Bank, 192 N. Y., 8, 84 N. E., 406; State v. Holtcamp, 235 Mo., 232, 138 S. W., 521; Elks Inv. Co. v. Jones (Mo.), 187 S. W., 74; Ex parte Dagley, 35 Okla., 180, 44 L. R. A., 389, 128 Pac., 699; Tabor v. Cook, 15 Mich., 322, and cases cited; In re Moore, 72 Cal., 338, 13 Pac., 880; 31 Cent. Dig., p. 183, sec. 16, and cases cited.

Under the law of this State, and the practice, as they existed when the above quoted provisions were embodied in and adopted as portions

of our present State Constitution, one charged with insanity was, it seems certain, entitled to and was given, a trial by jury.

At common law trial upon a charge of insanity was before a jury. Buswell on Insanity, p. 35; 2 Maddock's Chan., 728. See Shumway v. Shumway, 2 Vt., 341, and Howard v. Howard, 87 Ky., 616, 9 S. W., 411, 1 L. R. A., 610, wherein that procedure is explained.

"The common law of England (so far as it is not inconsistent with the Constitution or the Acts of Congress now in force)" was adopted by the Congress of the Republic of Texas by Act of January 20, 1840, and has been in force in this State ever since. 2 Gam. L., 177; Grigsby v. Reib, 105 Texas, 600, 153 S. W., 1124, L. R. A., 1915 E., 1.

The Act of the Congress of the Republic of Texas, approved December 20, 1836, "organizing the inferior courts," etc., authorized the chief justice of the county to hold a probate court (sec. 25), and to appoint "guardians to minors, idiots and lunatics" (sec. 24), and provided for appeals from all decisions or orders of the probate court to the District Court (sec. 26), and declared that "the common law of England, as now practiced and understood, shall, in its application to juries and to evidence, be followed by the courts of this Republic, so far as the same may not be inconsistent with this Act, or any other law passed by this Congress." (Sec. 41.)  Acts 1836, pp. 153-157, 1 Gam. L., 1213-1217.

The Act of December 22, 1836, "establishing the jurisdiction and powers of the District Courts," provided for the drawing of juries therein. Laws 1836, p. 207, 1 Gam. L., 267.

It may be presumed that it was contemplated that they would be called to act in cases as at common law. The Act of February 5, 1840, "regulating the duties of probate courts," etc., authorized those courts "to appoint guardians for idiots, lunatics, and persons non compos mentis, on full proof" (sec. 54), and relieved guardians of the necessity for giving bond on appeal (sec. 58). Acts 1840, pp. 128-129; 2 Gam. L., 302-303.

That status seems to have existed down to the passage of the Act of March 20, 1848, which specifically directed the chief justice of the county to "cause twelve competent jurors of the county to be summoned, who shall be sworn to inquire and a true verdict render, whether such person is of sound mind or not." Acts 1848, ch. 159. 3 Gam. L., 295.

The same provision, substantially, was incorporated into section 8 of the Act of February 5, 1858, ch. 93, as follows:

"If information in writing be given to any chief justice of a county, that any person in his county is an idiot, or a lunatic, or non compos mentis, and that the welfare of himself or of others, requires that he be placed under restraint, and said chief justice shall believe such information to be true, he shall order such person to be brought before him, and twelve competent jurors of the county to be summoned, who shall be sworn to inquire and a true verdict render, whether such

person is of sound mind or not; whereupon, the matter shall be tried, and if the jury shall return a verdict that the person is not of sound mind, and that he should be placed under restraint, the same shall be recorded, and the chief justice shall thereupon order him to be sent to the lunatic asylum," unless bond be given, etc. 4 Gam. L., 989.

No change as to jury was made by the amendatory Acts of December 16, 1863, 5 Gam. L., 697, and November 13, 1871, 7 Gam. L., 26.

Thus the situation stood, it seems, on February 15, 1876, when the people ratified our present Constitution and as portions thereof, its above quoted provisions.

Shortly afterward, by Act of August 15, 1876, the County Courts having been reorganized, the Legislature amended the above quoted portions of section 8 of said Act of 1858, by substituting the words "County Judge" for the words "Chief Justice," and by making some unimportant changes in phraseology, but retaining the requirement that the issue be tried by "twelve competent jurors." Acts 1876, ch. XCV, sec. 1; 8 Gam. L., 974. In connection with said change it should be remembered that our then recently adopted Constitution provided that "the County Court(s) shall have the general jurisdiction of a probate court; they shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis and common drunkards, . . . transact all business appertaining to estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards," art. 5, sec. 16, and that "a jury in the County Court shall consist of six men," art. 5, sec. 17.

Whatever else may have been the effect of that legislative action retaining at "twelve" the number of jurors in such cases, it emphasizes the here now important fact that under the pre-existing laws of Texas trials of such insanity cases had been *by juries.*

By the Revised Statutes of 1879, the number of jurors in such cases was reduced to six. Art. 108. That change probably was in deference to said section 17 of article 5.

Upon the whole, careful investigation has led us to the conclusions that the foregoing reflects the status of our laws upon the subject, at the dates mentioned, and that at the time of the adoption of the quoted provisions of our present Constitution as portions of that instrument, persons charged with insanity were entitled to a trial by jury, and, consequently, substantially the same pre-existing right of trial by jury in insanity cases is perpetuated by our organic law and now exists in this State. Whether that right goes to the extent of placing twelve men upon the jury or is fulfilled by a jury of only six men, is a question the decision of which is not material to the disposition of this appeal, inasmuch as the Act here under consideration neither provides nor allows, in such cases, any jury whatever.

To practically the same effect, regarding the above mentioned early laws of Texas, was the decision of the Court of Civil Appeals in this case, and also the decision of our Court of Civil Appeals for the Seventh

Supreme Judicial District in Loving v. Hazelwood, 184 S. W., 355, now pending in this court.

Our conclusion as to the effect of our Constitution, under the stated circumstances, finds strong support in the decisions of various States.

In Shumway v. Shumway, 2 Vt., 339, upholding the right of an appeal from a decree appointing a guardian of á person of unsound mind, it was said:

"It would be dangerous in the extreme to give courts of probate (which can have no jury) final jurisdiction of causes of such vast importance as it respects the liberty and happiness of our citizens. . . . We find, from an examination of the authorities, that the inquisition is only presumptive evidence of lunacy or insanity, and that a traverse of it is a right by law, and may be sent to a court of common law to be tried by a jury. . . .

"The foregoing principles are clearly established in Maddock's Chancery, pp. 729, 731, 737-738; also in 3 Atkins, p. 184, and 1 Vesey, Jun., 455."

In Pennsylvania it was declared:

"No man can be deprived of his liberty without the judgment of his peers, and it matters not to the law whether the alleged cause of detention is insanity or crime." Com. v. Kirkbride, 2 Brews. (Pa.), 419.

In an action to cancel a deed, for mental incompetency of the grantor, it was held that, in accordance with the principles and practice of the common law, the issue as to the grantor's sanity "should be settled by his peers,—a jury of his country." Howard v. Howard, 87 Ky., 616, 9 S. W., 413.

The right of jury trial in such cases was upheld in Smith v. People, 65 Ill., 375, and in Hamilton v. Traber, 78 Md., 34, 44 Am. St., 258, 27 Atl., 229.

"The mere fact of the existence of insanity can not of itself take away or abridge the civil rights of the subject, since, under a constitutional government, no man can be deprived of his liberty without the judgment of his peers; and it matters not to the law whether the alleged cause of his detention be insanity or crime. . . .

"It being admitted that, under a constitutional government, no person is to be deprived of his personal liberty or of his power to enter into contracts binding himself or his property without due process of law, the conclusion follows that no person can lawfully be declared insane, his personal liberty restrained, and the control and management of his property taken from him by a judicial determination of the issue of insanity vel non, unless, upon the original trial of the issue, or an appeal therefrom, such person may, as matter of right, obtain the verdict of a jury upon the facts and evidence produced. This is a rule recognized by the English law, Lord Eldon having laid it down as unquestionable that the crown has not, in England, the power of taking upon itself the care of any individuals, either as to their per-

sons or property, on the ground that they are of unsound mind, without the verdict of a jury," citing Shelf. Lun., 35, 60; Bryce v. Graham, 2 Wils. & Shaw, 481, 517.

"The rule is believed to be supported by the weight of authority in the United States." Buswell, Insanity, secs. 19 and 24.

None of the authorities cited in behalf of the plaintiff in error seems to us of very serious weight or controlling force on the issue as to the right of a trial by jury.

The constitutionality of said Act was attacked, in a habeas corpus proceeding, in our Court of Criminal Appeals, and therein a majority of that court said: "If we could properly decide the question, we might hold the Act constitutional," citing various cases hereinbelow mentioned. Ex parte Singleton, 72 Texas Cr., 122, 161 S. W., 123. But the point was not decided, that court holding that it was without jurisdiction over the case.

In Pittman v. Byars, 51 Texas Civ. App., 83, 112 S. W., 102, the right which was denied was that of a jury trial in a habeas corpus proceeding. The reasoning therein supports our views herein. The next preceding statement is true of Dennee v. McCoy, 4 Ind. T., 233, 69 S. W., 858, and of Capitol Trac. Co. v. Hof, 174 U. S., 1, 43 L. Ed., 873, 19 Sup. Ct., 580.

The decisions in Black Hawk Co. v. Springer, 58 Iowa, 417, 10 N. W., 791; Chavannes v. Priestly, 80 Iowa, 361, 45 N. W., 766, 9 L. R. A., 193, and In re Breese, 82 Iowa, 573, 48 N. W., 991, were under the Iowa Constitution, which provided that "no person shall be deprived of life, liberty or property without due process of law." They all rest, substantially, upon the propositions (a) that said provision applied "only to criminal prosecutions or accusations for offenses against the criminal law, where it is sought to punish the offender by fine or imprisonment," and (b) that "the inquest of lunacy by a board of commissioners is in no sense a criminal proceeding." The right of trial by jury guaranteed by our Constitution is not so restricted.

In Dowdell, Petitioner, 169 Mass., 387, 61 Am. St., 290, 47 N. E.. 1033, the decision concerning the right of trial by jury related to only said Fourteenth Amendment. The court said "it has been declared repeatedly that the phrase 'due process of law' does not of itself require a trial by jury in States where the usage and statutes are otherwise. Montana Co. v. St. Louis Co., 152 U. S., 160, 171; Hurtado v. People (Cal.), 110 U. S., 516; Walker v. Sauvinet, 92 U. S., 90."

In Kansas v. Linderholm, 84 Kan., 603, 114 Pac., 857, the jury in the probate court, and also the jury in the District Court, consisted of four persons, one of whom was a physician, as prescribed by statute. It was held that the right of trial by jury had not been violated. The status of the law and practice in such matters prior to the adoption of the Kansas Constitution is not shown.

In Simon v. Craft, 182 U. S., 427, 45 L. Ed., 1165, 21 Sup. Ct., 836, which arose under an Alabama statute, the court said: "We accept as

conclusive the ruling of the Supreme Court of Alabama that the jury which passed on the issues in the lunacy proceeding was a lawful jury."

In re Choo Goo Pooi, 25 Fed., 77, was a case in which the relator was held not entitled to a jury trial, the Act of Congress authorizing his extradition involving an exercise of the police power not involving punishment. By the terms of the Act the order is to be made, not by any court having power to summon a jury, but "before some justice, judge, or commissioner of a court of the United States."

In re Clark, 86 Kan., 539, 39 L. R. A. (N. S.), 680, 1913C, Ann. Cases, 317, 121 Pac., 492, was a habeas corpus case in which the. relator, as defendant in a prior criminal case, had been found by the jury to be insane. The court held that he had received the benefit of due process of law, citing In re Brown, 39 Wash., 160, 81 Pac., 552, 1 L. R. A. (N. S.), 540, 109 Am. St., 868, which is to the same effect.

In the matter of William Ross, 38 La. Ann., 523, arose under a statute which provided that the person represented to be a lunatic should be brought before the judge *at chambers,* and if, after inquiry, the judge found that such person should be sent to the insane asylum, he should make out his warrant addressed to the sheriff directing him to convey such person to such asylum.

Upon habeas corpus proceedings it was contended that the judge had no right to hear and determine *at chambers,* and that the trial and decision of the matters were without "due process of law." Held: The relator had not been denied due process of law. No issue seems to have been made upon the point that the trial was without a jury. If the Louisiana Constitution declared that "the right of trial by jury shall remain inviolate," that fact is not disclosed by the report of the case, nor does it show the status of pre-existing laws relating to trial by jury.

In Fant v. Buchanan (Miss.), 17 So., 371, it was held that a statute providing for a jury of six in inquests of lunacy did not conflict with the provision of the State Constitution that "the right of trial by jury shall remain inviolate," nor with said Fourteenth Amendment. Therein the court said: "The fact that the Code of 1880 provided for an inquest of six men, and was in force when the Constitution of 1890 was adopted. and conferred on the chancery court full jurisdiction in cases of idiocy, lunacy and persons of unsound mind is suggestive that the grant was made with reference to the manner in which the jurisdiction had been made and was being exercised under the statutes of the State." It was held: "The Legislature, in regulating the exercise of its jurisdiction by the chancery court, to which a jury does not belong except as specially provided by legislation, might dispense with a jury or prescribe any number it pleased, without violating any provision of the Constitution."

That reasoning as to the right of the Legislature to dispense with jury trials is not applicable to our judicial system and laws, and

is obnoxious to our Constitution when it is read in the light of pre-existing Texas laws relating to jury trials in lunacy cases.

In re Crosswell, 28 R. I., 137, 13 Ann. Cas., 877, 66 Atl., 55, was a case wherein it was held that "due process of law" was afforded by a statute which provided that an insane person might be placed in any hospital of a certain class upon a certificate from two practicing physicians of good standing, stating that such person was insane; but making it the duty of the court, upon an application for a writ of habeas corpus, thereafter, "to inquire and determine as to the sanity or insanity or the necessity of further restraint of the person confined at the time such application was made," and further providing for a trial of the issue before a jury, *at the discretion of the court,* and for his discharge from confinement "if it appears upon the verdict of a jury or in the opinion of the court, that such person is not insane or is not dangerous to himself or others, and ought not longer to be confined."

In so far as the right of a jury trial is not made absolute, that decision may conflict with our views; but the status of the law of that State with regard to juries in such cases prior to the adoption of its Constitution, is not shown.

The asserted right having existed at common law, and in various American States and especially in Texas prior and down to the adoption of our present Constitution, so much of said Act of 1913 as relates to a hearing before a commission, in lieu of the time honored trial by jury, is invalid; and, inasmuch as that vice obviously permeates said entire Act, we hold it void as a whole. The effect, of course, is to leave the old law in force.

Failure of defendant in error to deny, in the habeas corpus proceeding, that she is a lunatic, is of no consequence, the presumption of law being that she is of sound mind. In re Phillips, 158 Mich., 155, 122 N. W., 554; note in 44 L. R. A. (N. S.), 119.

Necessarily defendant in error would be entitled to full liberty were it not for the fact that, in compliance with the requirements of the old law, an affidavit charging her with lunacy has been presented to the county judge.

For further proceedings under Rev. Stats., 1911, art. 150 et seq., she should be remanded to the custody of the sheriff of El Paso County, and if such proceedings be not instituted within ten days after issuance of the mandate of this court, she should be released from all restraint.

The judgment of the Court of Civil Appeals is modified to the extent of fixing such definite time limit within which such further proceedings may be instituted, and, as so modified, it is affirmed.

Mr. Justice Yantis absent and not sitting.

Opinion delivered June 30, 1917.

ADDENDUM BY ASSOCIATE JUSTICE HAWKINS ONLY.

Certain other questions are presented. It is true that decision thereof is not essential to a disposition of this appeal; nevertheless, inasmuch as they are constitutional in character and recurrent in nature, I think that they, too, should be discussed.

1. As to notice.

Due process of law requires due and reasonable notice in proceedings to determine whether a person is of sound or unsound mind. To that effect are reason and nearly all the authorities, although a few cases in other States hold such notice unnecessary as being valueless to an insane person, thereby assuming the very fact which is to be determined.

Such notice is not in express terms required by said Act of 1913. However, in view of the requirements of the common law, and our law and practice in regard to notice in other civil cases, and constitutional requirements relating to notice and an opportunity to prepare and to be present and to defend, I think that, in support of said Act it should be construed as contemplating that such due notice shall be given. That view is supported by many high authorities. The record in the case at bar is such as to justify indulgence of the presumption that such notice was given.

2. As to judicial power.

The judicial power of this State is vested, by our Constitution, in "courts," except that, in carefully enumerated matters and for specified purposes, it is vested in certain justices and judges. Art. 5.

Said Act apparently attempts to confer upon the county judge, rather than upon the County Court, jurisdiction and authority to perform the specified duties and to exercise the stated powers, including the pronouncement of judgment, under stated circumstances (art. 159), and the entry of the order setting aside such judgment whenever the lunatic shall have been discharged from the asylum as cured and the superintendent shall so certify. Art. 161. That impression is somewhat heightened, perhaps, by the fact that various earlier Texas laws on the subject, including those set out in Revised Statutes, 1911, appear much more clearly to impose the more serious of those duties upon the County Court as a court. Whether, under our Constitution, those powers validly may be conferred upon and exercised by the county judge, as a judge and not as a court, is a question which seems to me to lie upon the face of the Act, calling for consideration, although not specifically presented by the litigants; and upon that point my mind is not now fully satisfied. It may be that the law which the Act of 1913 sought to amend is not fairly open to such possible objection; but, if it is, the point suggested may be best determined in proceedings based upon that old law.

However, regardless of the suggested distinction between the "County Court" and the "county judge," in the matter of the exercise of judicial power, it is clear to my mind that said Act of 1913 practically places the exercise of such power, not in the court, nor yet in the

judge, but in the commission, and in the superintendent. The Act arbitrarily requires that the original judgment shall be of a certain prescribed character, and with stated legal effects, to be determined solely by the nature of the report of the commission; and, under the stated conditions, such judgment may result in depriving the respondent of his liberty and of his property. Likewise the certificate of the superintendent controls the judgment of restoration. Evidently neither the report nor the certificate is merely to aid the court or the judge in the exercise of judicial power.

The judgment is in every instance, indeed, pronounced by the court or the judge; but that, it seems to me, is purely formal, and, in practical effect, neither the court nor the judge really exercises one whit more of judicial discretion and power than does the clerk who records the judgment. I do not believe that the prescribed procedure involves due exercise of judicial power within contemplation of said judiciary article 5; and for that reason, if for none other, I regard the entire Act as invalid.

Addendum filed June 30, 1917.