TORRES et al. v. GERSDORFF. (No. 7606.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 13, 1926. Rehearing Denied Nov. 17, 1926.)

1. Evidence ⬅63—Insane persons ⬅2.

There is a presumption of sanity, so that one pleading insanity has burden of proving it.

2. Evidence ⬅67(2)—One legally adjudged insane is presumed insane till adjudication of restoration to reason.

Presumption of insanity of one shown legally adjudged insane continues till adjudication of restoration to reason, with burden of showing restoration on one asserting it.

3. Evidence ⬅63.

Adjudication of insanity being in proceeding under unconstitutional statute, presumption of sanity still attaches.

4. Evidence ⬅63.

It will be presumed that adjudication of insanity was under the only statute then in effect authorizing it, and thereafter held unconstitutional.·

5. Evidence ⬅251(2).

Admissions of guardian ad litem for alleged insane person against ward's interest will be disregarded.

6. Homestead ⬅117 — Under Constitution, consent of wife to sale of homestead is necessary whether it be community or separate property.

Inhibition of Constitution against sale of homestead by owner, if a married man, without consent of wife, applies whether homestead be his separate property or community property.

7. Homestead ⬅118(5).

To sustain. deed of homestead in which owner's wife did not join, there must be clear and full proof of her insanity when it was executed.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Frank Gersdorff against Mrs. Mary Torres and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Davis & Wright, of San Antonio, and John F. Perry, of Rock Springs, for appellants.

Terrell, Davis, Huff & McMillan, of San Antonio, for appellee.

FLY, C. J. This is an action of trespass to try title to lot 6 and 4.9 feet of lot 8, block 3, new city block 321, on North Pecos street, between West .Travis and West. Salinas streets in the city of San Antonio, instituted by appellee, Frank Gersdorff, against Mary Torres, Roy Torres, Modesto Torres, and E. J. Torres. The cause was tried by jury, and a verdict instructed in favor of appellee. In the judgment it is recited that Mary Torres had been adjudged insane, and was confined in the San Antonio State Hospital for the Insane, and that she had appeared through her guardian ad litem, Robert G. Harris, duly appointed by the court. E. J. Torres and Modesto Torres were dismissed from the suit because of the death of Modesto Torres, and because E. J. Torres, being absent from the state, had not been served. Mrs. Mary Torres is the mother of Roy Torres, and the guardian ad litem was appointed at his instance and request, on the ground that she was insane.

Modesto Torres was the common source of title, and there was testimony tending to show that he conveyed the land to appellee by deed dated July 17, 1923, which was in form a general warranty deed. There was evidence tending to show that the property in controversy was the separate estate of Modesto Torres, and that he and Mary Torres occupied it as their homestead. The evidence showed that Modesto Torres and Mary Torres were man and wife. The property was a homestead when it was conveyed to appellee. Mary Torres, although at home when the deed to appellee was executed, did not join in the deed. She had been in the asylum for some time previous to that time. It was admitted that no guardianship proceedings or community administration had been applied for or granted. The district court recited that Mary Torres was insane when a guardian ad litem was appointed to represent her. ·

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1, 2] It is a presumption of law that all men are sane, and the burden rests on the party pleading insanity to establish such insanity, but, when it is proven that a person has been legally adjudged to be insane, the presumption of insanity will continue until an adjudication of a return to reason has been made. The burden of showing the restoration of reason rests on him who asserts it. 2 Chamberlayne, Mod. Ev. § 1043; San Antonio v. Porter, 24 Tex. Civ. App. 444, 59 S. W. 922; Herndon v. Vick, 18 Tex. Civ. App. 583, 45 S. W. 852.

It is recited in the judgment of the trial court that Mary Torres had prior thereto "been legally adjudged to be insane by the county court of Bexar county, Tex., and being now confined in the San Antonio State Hospital, one of the insane asylums of the state of Texas." Upon what evidence that recital was founded we know not.

There is testimony to the effect that Modesto Torres, on or about April 12, 1923, borrowed $1,250 from the Southern Finance Corporation to enable him to pay taxes and an assessment for paving about his property. The corporation applied $589.34 to the paving company, $240.89 taxes to the city of San Antonio, $331.19 taxes to Bexar county, and paid $924.50 in cash to Modesto Torres. He failed to repay the loan, but on July 19, 1923, sold the property to appellee in order to obtain money to pay off the mortgage given to secure the loan. The loan, with accrued interest, was paid, and the balance of the money was paid by Gersdorff to Modesto Torres. The deed to the property grew out of, and was based upon, a mortgage on the Modesto and Mary Torres homestead.

[3-5] Mary Torres may have been insane in 1915, when the court, in its judgment, finds her to have been insane, but, unless there was a legal adjudication of the fact of insanity by a constitutional tribunal under constitutional procedure, the judgment did not avail; and, in the absence of such judicial action, the legal presumption of sanity attaching to all citizens would still attach to her. It is alleged by appellee in a supplemental petition that Mary Torres was adjudged to be insane by the county court of Bexar county on or about July 21, 1915, and that was followed up by an admission by the guardian ad litem that his ward, Mary Torres, "was legally adjudged to be insane on July 21, 1915." The only law in effect at that time authorizing the adjudication of insanity was the act of 1913, which provided for a commission, composed in whole or in part of physicians, to be appointed by the county judge, to whom was given the power to pass upon the sanity or insanity of persons brought before it. General Laws 1913, pp. 341–347. That act repealed all laws and parts of laws in conflict with its provisions. That law was held to be unconstitutional by the Supreme Court, as it

had been held by at least two Courts of Civil Appeals prior thereto. White v. White, 108 Tex. 570, 196 S. W. 508, L. R. A. 1918A, 339. No other law was in effect when Mary Torres was declared a lunatic, and consequently she must have been declared a lunatic under that unconstitutional law. Her incarceration in the insane asylum was therefore illegal and void. The declaration of the trial court in its orders and judgment could have had no higher authority than the illegal and void report by the commissioners appointed by the county judge in 1915. All the presumptions must be indulged that Mary Torres was confined in the insane asylum under the terms of the act of 1913, because it was not declared unconstitutional by the Supreme Court until 1917, two years thereafter. There is nothing to indicate that any other law was invoked. The recitals of the court in its judgment were the only evidence in the case upon which it was possible to base a finding of insanity. The admissions of the guardian ad litem as to the state of mind of his ward can have no force or effect in a court of law, equity, and justice. He had no authority to admit any fact that would undermine and destroy the defense of the ward that he had been appointed to defend. The pivotal fact, the state of mind of Mary Torres when the mortgage and deed were executed in 1923, was not combated by the guardian ad litem, but the insanity of the ward was admitted and the defense she might offer destroyed. Such admissions will not be considered. To sustain such admissions would render farcical the appointment of guardians ad litem in courts of justice. As said by this court in Madero v. Calzado, 281 S. W. 328:

"In suits of this character, nothing can be admitted against the interest of the absent defendant and the one chosen to represent that interest in a case stands in court to insist that no pleading shall go unchallenged, no step shall be taken, no act done, no evidence produced, which shall in any manner be legitimately the subject of an objection or exception."

Such guardian ad litem is appointed to assist the court in protecting the rights of the ward and not to lessen the labors or give material aid to the plaintiff in the case. Admissions in such cases by the guardian ad litem against the interests of the ward will be disregarded, and no judgment based on such admissions will be sustained.

[6, 7] The right to recover the homestead of this woman, in this case, depends upon the enforcement of an exception to the provisions of the Constitution protecting the homestead from forced sale, and from voluntary sale, unless the wife joins the husband, in the prescribed manner, in the deed of conveyance. The ruling is sought to be justified on the ground that the "hopelessly insane" wife is civiliter mortuis, that is, legally dead, and on this the Constitution is ignored to

meet the exigencies of a case. The Constitution says: .

"Nor shall the owner, if a married man, sell the homestead without the consent of the wife given in such manner as may be prescribed." Const. art. 16, § 50.

It would make no difference whether the homestead may be the community property of husband and wife or the separate property of one or the other. The sale of the homestead is null and void, unless joined in by the wife; there being no exception to the rule in Constitution or statute. An exception is, however, read into the Constitution by judicial construction, and, on the ground of its inconsistency with reason, in the case of an insane wife the Constitution is quietly ignored. Speer's Law of Marital Rights, § 406, and authorities cited. The doctrine has met with the approval of the Supreme Court.

We bow to the decisions, but in no case will a deed to a homestead by the husband, which is sought to be upheld without the signature of the wife on the ground of her insanity, meet with success in this court, without clear and full proof of her insanity, which has been decreed by legal process, unaided by any admissions of a guardian ad litem.

In a motion for new trial filed by attorneys who did not appear for Mary Torres on the trial, filed as an amendment to a most formal and perfunctory motion for a new trial filed by the attorney for Roy Torres and the guardian ad litem, much matter was set up to show that Mary Torres was at home with her husband when the deed was executed, and that she remained in the home for more than a year, and was with her husband and ministering unto him at the time of his death. An affidavit made by her was attached to the motion for new trial, in which she sets forth her rights in the property. She disclaimed knowledge of the deed made to appellee. During the year before her husband's death she did the household work, went about the city of San Antonio, did the shopping, collected the rents, and cared for, and waited on, her husband until his death. She swore the property was worth $16,000, more than double what Modesto Torres was said to have been paid for it. She also swore that she was never served with a citation. Officers and physicians in the San Antonio State Hospital swore that Mary Torres was mentally qualified to testify in a court, and could attend to the ordinary affairs of life such as women usually attend to; that she was a fairly intelligent conversationalist, and had a good memory. There were other important affidavits bearing on the case, attached to the motion, and we conclude that the motion for new trial should have been granted.

In view of the fact that there was no legal proof that the wife was insane when the mortgage and deed were executed, that inexcusable admissions against the interest of the ward were made by the guardian ad litem, that the rights of the ward were not properly protected, and that the motion for new trial should have been granted, the judgment will be reversed, and the cause remanded.