BOLLN *v.* NEBRASKA.

|176   83|
|176  584|
|176· 603|

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 393.   Argued December 4, 5, 1899. — Decided January 15, 1900.

A law of Nebraska permitting the prosecution of felonies by information is not in violation of the Constitution of the United States.

Whatever be the limitations upon the power of a territorial government, it becomes entitled, upon the admission of such Territory as a State, to all the rights of dominion and sovereignty belonging to the original States, and stands upon an equal footing with them in all respects.

An objection that a defendant was denied due process of law in being refused a jury trial upon a plea in abatement, cannot be raised here, when no violation of the Fourteenth Amendment was set up until after the cause had been decided by the Supreme Court of the State.

· THIS is a writ of error to review a judgment of the Supreme Court of Nebraska, affirming a conviction of the plaintiff in error by the district court of Douglas County, for the crime of embezzlement.

The proceedings in the case, so far as they are disclosed by the record before us, which was agreed upon under subdivision nine of rule ten of this court, are as follows:

On April 2, 1896, an information was filed by the county attorney for the county of Douglas against the plaintiff in error, both as city treasurer of the city of Omaha and as treasurer of the board of education, for embezzling moneys belonging to the city as well as moneys belonging to the school district.

On April 4, a motion to quash was filed upon four grounds: (1) That there was no authority of law to file an information for a felony; (2 and 3) because the prosecution was in contravention of the constitution of the State; and (4) because it was in contravention of article fourteen of the Constitution of the United States, and was without due process of law.

On the same day a paper was filed, entitled a plea in abatement, which prayed judgment that the information might be quashed for the same reasons, and in precisely the words of the motion to quash.

On the same day, a demurrer was filed to the "*eighteen* paragraphs" of the plea in abatement, upon the ground that these paragraphs did not state facts sufficient to constitute a defence, or to raise an issue upon the plea.

Upon the same day, an order was entered overruling the motion to quash, to which the defendant excepted.

On April 6, another order was entered sustaining the demurrer as to the eighteen "reasons therein set forth," except the ninth; and "the court doth overrule the said demurrer as to the ninth reason therein set forth, with leave to the State to reply instanter." The State duly excepted to the ruling as to the ninth reason.

On the same day, a "reply to the ninth paragraph of the defendant's plea in abatement" was filed by the State, admitting that the defendant had had "no preliminary examination for said crime referred to in said ninth paragraph," but alleging that he waived such preliminary examination and his right thereto, as shown by the records of the court.

On April 8, 1896, a demurrer was filed to the information, and upon the same day both parties appeared in court, and announced their readiness to proceed to trial upon the ninth paragraph in defendant's plea in abatement. Thereupon the defendant demanded a trial by jury, and the court, on consideration, overruled the demand, to which ruling the defendant duly excepted. After introduction of evidence, pro and con, and upon due consideration, the court found that the defendant had waived a preliminary examination, and therefore found against him, and overruled the ninth paragraph of the plea in abatement. By the same order the demurrer was also overruled. The defendant being arraigned, refused to plead, whereupon the court entered a plea of not guilty, and the trial proceeded, and resulted in a verdict finding the defendant guilty upon the fourth count of embezzling $2500; upon the ninth count of embezzling $3000, and upon the eleventh count of embezzling $100,000.

Motion for a new trial being overruled, defendant was sentenced to fine and imprisonment upon the fourth, ninth and eleventh counts.

The case was carried to the Supreme Court of Nebraska and the judgment affirmed. The court delivered an opinion, in which it stated that "a plea in abatement was filed, to which the county attorney interposed a demurrer, which was overruled as to the ninth ground of the plea, and sustained as to the other seventeen grounds therein set forth." The petition in error, it was stated, contained 279 assignments, the only ones of which could be said to involve a Federal question being, first, that the State had no authority to prosecute by information, and, second, the refusal of the court to call a jury to pass upon the issue tendered by the ninth paragraph of the plea in abatement, that the defendant waived a preliminary examination before the magistrate. This opinion was filed May 18, 1897. 51 Nebraska, 581.

On September 20, 1897, plaintiff in error filed in the Supreme Court of the State assignments of error which appear to have been intended for this court, and on September 18, 1899, served upon the attorney general a petition to this court for the allowance of a writ of error upon the ground, first, that the plaintiff was convicted upon an information, and, second, because he had been denied a jury trial upon the issue tendered by special plea, that he had had no preliminary examination and had not waived the same.

Mr. Joel W. West for plaintiff in error.

Mr. Constantine J. Smyth for defendant in error.

MR. JUSTICE BROWN, after making the above statement, delivered the opinion of the court.

Two questions were raised in the briefs and argument of the plaintiff in error: First, that a proceeding by information for a felony was not, so far as the State of Nebraska is concerned, due process of law, under the Fourteenth Amendment to the Constitution of the United States. Second, that the trial by the court, without a jury, of the issue raised by the ninth plea in abatement, whether the defendant had waived a preliminary examination, was not due process of law.

1. The first question, so far as it applies to States in general, was settled adversely to the insistence of the plaintiff in error in *Hurtado* v. *California*, 110 U. S. 516, in which it was held that a prosecution for murder did not necessarily require an indictment by a grand jury, where the constitution of the State authorized prosecutions for felonies by information. Subsequent cases have done nothing to weaken or qualify the force of this decision. Its principle was applied in *In re Kemmler*, 136 U. S. 436, to a law of New York providing for the punishment of death by electricity; in *Dent* v. *West Virginia*, 129 U. S. 114, to a statute subjecting physicians to punishment who practised medicine without a certificate as to their competency; in *Caldwell* v. *Texas*, 137 U. S. 692, to a statutory indictment for murder under the laws of Texas; and in *Hallinger* v. *Davis*, 146 U. S. 314, to a state statute conferring upon one charged with crime the right to waive a trial by jury, and to elect to be tried by the court. It was also cited with approval in *Baldwin* v. *Kansas*, 129 U. S. 52; *Leeper* v. *Texas*, 139 U. S. 462; *McNulty* v. *California*, 149 U. S. 645; *Holden* v. *Harvey*, 169 U. S. 383, and in *Hagar* v. *Reclamation District*, 111 U. S. 701.

It is insisted, however, that under the act of Congress of April 19, 1864, 13 Stat. 47, enabling the people of Nebraska to form a constitution and state government for admission into the Union, the power given to that State is restricted in that particular. After authorizing the inhabitants to form for themselves a constitution and state government, and providing for a constitutional convention, the fourth section of the act required " that the members of the convention . . . shall declare, on behalf of the people of said Territory, *that they adopt the Constitution of the United States;* whereupon the state convention shall be, and it is hereby, authorized to form a constitution and state government." We are informed, however, as a matter of history, in *Brittle* v. *The People*, 2 Nebraska, 198, that, the people of the Territory being at that time opposed to becoming a State, the convention adjourned *sine die* without taking action beyond its own organization.

Subsequently, however, the territorial legislature, without

calling a convention, framed a constitution which was submitted to and adopted by the people at an election held June 21, 1866. This constitution contained the following provision (schedule, sec. 6): "This constitution is formed, and the State of Nebraska asks to be admitted into the Union on an equal footing with the original States, on the condition and faith of the terms and proposition stated and specified in an act of Congress, approved April nineteenth, 1864, authorizing the people of the Territory to form a constitution and state government; the people of the State of Nebraska hereby accepting the conditions in said act specified."

At its following session and on February 9, 1867, 14 Stat. 391, c. 36, Congress passed another act admitting the State of Nebraska into the Union "upon an equal footing with the original States, in all respects whatsoever," though the second section of this act declared "that the State of Nebraska shall be, and is hereby, declared to be entitled to all the rights, privileges, grants and immunities, and to be subject to all the conditions and restrictions of an act entitled 'An act to enable the people of Nebraska to form a constitution and state government, and for the admission of such State into the Union on an equal footing with the original States.'"

The argument of the plaintiff in error in this connection is that, by these acts, the people of Nebraska *adopted the Constitution of the United States*, and thereby the first eight amendments containing the bill of rights became incorporated in the constitution of the State, and that the right to proceed for felonies, other than by an indictment of a grand jury, (as required by the Fifth Amendment,) was taken away from such State.

But conceding all that can be claimed in this connection, and that the State of Nebraska did enter the Union under the condition of the enabling act, and that it adopted the Constitution of the United States as its fundamental law, all that was meant by these words was that the State acknowledged, as every other State has done, the supremacy of the Federal Constitution. The first section of the act of 1867, admitting the State into the Union, declared: "that it is hereby admitted

into the Union upon an equal footing with the original States in all respects whatsoever." It is impossible to suppose that, by such indefinite language as was used in the enabling act, Congress intended to differentiate Nebraska from her sister States, even if it had the power to do so, and attempt to impose more onerous conditions upon her than upon them, or that in cases arising in Nebraska a different construction should be given to her constitution from that given to the constitutions of other States. But this court has held in many cases that, whatever be the limitations upon the power of a territorial government, they cease to have any operative force, except as voluntarily adopted after such Territory has become a State of the Union. Upon the admission of a State it becomes entitled to and possesses all the rights of dominion and sovereignty which belonged to the original States, and, in the language of the act of 1867 admitting the State of Nebraska, it stands " upon an equal footing with the original States in all respects whatsoever." *Escanaba Company* v. *Chicago*, 107 U. S. 678; *Cardwell* v. *American Bridge Co.*, 113 U. S. 205; *Willamette Iron Bridge Co.* v. *Hatch*, 125 U. S. 1; *Ward* v. *Racehorse*, 163 U. S. 504. Indeed, the legislation of Congress connected with the admission of Nebraska into the Union, so far as it bore upon the question of citizenship, was fully considered by this court in the case of *Boyd* v. *Thayer*, 143 U. S. 135, and the conclusion reached that upon its admission into the Union the citizens. of what had been the Territory became the citizens of the United States and of the State.

This court has also repeatedly held that the first eight amendments to the constitution applied only to the Federal courts, and it certainly could never have been intended that these amendments should be imposed upon Nebraska, and thereby a hard and fast rule made for that State that would forever preclude amendments inconsistent with the bill of rights of the Federal Constitution, and which this court has held to be applicable only to Federal courts. As we have repeatedly held, the Fourteenth Amendment was not intended to curtail the powers of the States to so amend their laws as to make them conform to the wishes of their citizens, to

changed views of administration, or to the exigencies of their social life. It may be readily supposed that the inhabitants of each State understand perfectly their own local needs and interests, and, with the facilities with which the constitutions of the several States may be amended, it is scarcely possible that any evil which might be occasioned by an improvident amendment would not be readily redressed. Not only did Congress in the act of 1867 declare that Nebraska was admitted upon an equal footing with the original States, but the whole Federal system is based upon the fundamental principle of the equality of the States under the Constitution. The idea that one State is debarred, while the others are granted, the privilege of amending their organic laws to conform to the wishes of their inhabitants, is so repugnant to the theory of their equality under the Constitution, that it cannot be entertained even if Congress had power to make such discrimination. We are, therefore, of opinion that the provision of the constitution of Nebraska, permitting prosecutions for felony by information, does not conflict with the Fourteenth Amendment to the Constitution of the United States.

2. We do not find it necessary to consider the question, whether the court denied to the defendant due process of law, in refusing a jury trial upon the question whether he had waived a preliminary examination before the magistrate. The statute of Nebraska, providing for the prosecution of offences by information, requires that "no information shall be filed against any person for any offence until such person shall have had a preliminary examination therefor, . . . unless such person shall waive his right to such examination." A plea in abatement is said to have been filed upon that ground; but the only plea in abatement which appears in the transcript of the record before us sets forth but four grounds: First, that there was no authority of law for the filing of an information charging the defendant with a felony; second, because the defendant, under the state constitution, was granted immunity from answering to a criminal charge, except upon presentment or indictment by a grand jury; third, because this prosecution is in contravention of the state constitution,

guaranteeing that no person shall be deprived of life or liberty without due process of law; fourth, because this prosecution is in contravention of the Fourteenth Amendment of the Constitution of the United States. It is true that, in the demurrer to this plea, and in the order sustaining such demurrer, it would appear that there were eighteen grounds for the plea in abatement; and that as to the ninth ground, the demurrer was overruled, with leave to the State to reply instanter. From the reply to the plea in abatement it would appear that the ninth paragraph of the plea set up the fact that the defendant did not have a preliminary examination as required by law, the reply alleging that he waived it; but nowhere in the plea in abatement does it appear what this ninth paragraph was, although the judgment of the court was "that the defendant waived a preliminary examination before the examining magistrate, and therefore finds against the defendant, and overrules the said ninth paragraph of the said plea in abatement." As the opinion of the Supreme Court also discusses the ruling of the court below denying to the defendant a jury trial upon this ninth paragraph, we may, perhaps, be at liberty to take notice of it; although in subdivision nine of rule ten, under which this record was printed, it is said that the court will consider nothing but those parts of the record designated by the parties, and the errors so stated.

But, without expressing a decided opinion upon this point, we are confronted by another difficulty in the fact that it is nowhere alleged in the record that a denial to the defendant of a jury trial of this issue was violative of the Constitution of the United States. It is true that in the fourth paragraph of the plea in abatement it is said that " this prosecution is in the contravention " of the Fourteenth Amendment, but this evidently refers to the prior paragraphs, which deal only with a prosecution by indictment. In the opinion of the court discussing this question, no allusion is made to the denial of this jury trial being in conflict with the Fourteenth Amendment, and it is only in the assignments of error, filed in the Supreme Court of the State four months after its judgment of affirmance, that the defendant sets it up as the denial

of a Federal right. Indeed, it nowhere appears in the record or in the opinion of the Supreme Court that the denial of a jury trial of this issue was claimed to be in contravention even of the state constitution. The question is discussed by the court as one of general law, and it is only the prosecution by information that the court discusses as a constitutional question.

On November 10, 1899, the Chief Justice of the Supreme Court of Nebraska certifies that the only reference made by the plaintiff in error to the Constitution of the United States is set forth in certain language quoted from his brief. From this brief it would appear that the denial of the right of trial by jury upon the question of waiver of preliminary examination was set up as a violation of the constitutional provision of Nebraska, that "the right of a trial by jury shall remain inviolate;" but it nowhere appears that it was claimed to be in violation of any other provision of the Constitution, or of the Fourteenth Amendment to the Constitution of the United State.

Upon this state of the record we are unable to say that the decision of the court below was against a title, right, privilege or immunity, specially set up or claimed by either party, under the Constitution of the United States.

We have repeatedly decided that an appeal to the jurisdiction of this court must not be a mere afterthought, and that if any right, privilege or immunity is asserted under the Constitution or laws of the United States it must be specially set up and claimed before the final adjudication of the case in the court from which the appeal is sought to be maintained. It is true that this court has sometimes held that, if a Federal question appear in the record and was decided, or such decision was necessarily involved in the case, and that such case could not have been determined without deciding such question, the fact that it was not specially set up and claimed is not conclusive against a review here; but such cases have usually, if not always, arisen under the first or second clauses of section 709, and have involved the validity of a treaty, statute or authority exercised under the United States, or the validity of a statute or authority exercised under a State,

where such statute or authority is alleged to be repugnant to the Constitution or the laws of the United States. *Columbia Water Power Co.* v. *Columbia Street Railway &c. Co.*, 172 U. S. 475. In the case under consideration the right to a trial by jury is claimed under the Constitution of the United States; but as it was never set up or claimed prior to the decision of the Supreme Court of the State, it is too late to raise the question here.

The fact that the defendant did set up in his plea in abatement his immunity from prosecution upon an information of the county attorney, clearly appears, but we are not at liberty to consider other constitutional questions which might have been involved, if they had been properly set up and claimed. The observations of this court in *Dewey* v. *Des Moines*, 173 U. S. 193, are conclusive against our consideration of this question.

The judgment of the Supreme Court of the State of Nebraska is therefore

*Affirmed.*

MR. JUSTICE HARLAN dissented.