**Rudolph PRESTON and George Earl Graham, Plaintiffs in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16788.**

Court of Criminal Appeals of Oklahoma.

Dec. 9, 1971.

R. Michael Cantrell, Oklahoma City, for plaintiffs in error.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Rudolph Preston and George Earl Graham, hereinafter referred to as defendant Preston and defendant Graham, were charged, tried, and convicted in the District Court of Oklahoma County, Okla-

homa for the offense of Burglary in the Second Degree. Their punishments were fixed at seven (7) years imprisonment, and from said judgments and sentences, a timely appeal has been perfected to this Court.

Because of the ultimate conclusion, we do not deem it necessary to recite the statement of facts. Defendant asserts seven propositions of error, only one of which we deem necessary to discuss.

Defendant's third proposition asserts that the trial court erred in refusing to sustain several motions for mis-trial made by defense counsel throughout the closing argument of the Assistant District Attorney as a result of material and fundamental errors made during said argument by way of prejudicial statements to the jury. We are of the opinion that this proposition is well taken.

The Record reflects that the Assistant District Attorney made the following improper remarks:

"Ask yourself how soon do you want to open your house to these people. How soon do you want to "open your house to these people [sic]. *Now if you want to give them seven years they may be in there past the fourth of July.*[1] The facts in this case demand and deserve the maximum penalty.

"There is no doubt about the guilt in this case. . . . These aren't college kids; they are burglars. Not the kind of people you meet walking down the street. They're thieves. *And they are going to get into your house and your house and your house if you don't do something about it.*

"*I don't really care. I have tried a lot of cases. I don't have as much experience as Mr. Scott does. I'm not worried about them because they don't know where I live.* I've got an unlisted phone number. They might find out where you live. I'm not saying they will." (Emphasis added) (Tr. 134)

We further observe that the trial court, in overruling the defendant's motion for mis-trial, stated:

"THE COURT: Well, I don't know. I'll tell you: I just don't know why Assistant District Attorneys make the arguments they do. It seems like to me they always try to see how close they can get to the edge without falling off. But that's the way it is . . ."

(Tr. 136)

We are of the opinion that the Assistant District Attorney in his closing argument not only "got to the edge of the cliff," but also "jumped off." Improper remarks of the Assistant District Attorney were so prejudicial and inflammatory as to cause reversal. Reversed & Remanded.

BRETT, J., specially concurs.

BRETT, Judge (Special concurrence):

I concur. The time has arrived to require the prosecutor to more closely confine his closing remarks to the facts and evidence presented at the trial. While this Court has liberally construed the rules governing closing arguments, some prosecutors have interpreted that application to constitute a license to inject their personal views into those arguments. The result is that conscientious trial judges are required to weigh the merits of a motion for mistrial against the expense involved in granting a new trial, while at the same time believing the evidence may be sufficient to sustain the conviction. This injected and improper requirement becomes unnecessary if the prosecutor conducts himself as he knows he should.

Also, when this Court considers the matter, the cost factor is of no consequence compared to the accused's constitutional guarantee to due process of law. One solution to prevent such deliberate, improper conduct on the part of the prosecutor, in this respect, may be the assessment of the costs for the mistrial to that prosecutor. While "due process" does not guarantee a perfect trial, it does guarantee a fair trial.

1. The case was tried on January 13, 1971.