540 P.2d 1252

**The STATE of Arizona, Appellee,**

v.

**Robert MOORE, Appellant.**

**No. 3031.**

Supreme Court of Arizona,
In Banc.

Oct. 6, 1975.

Rehearing Denied Nov. 18, 1975.

**272**

Bruce E. Babbitt, Atty. Gen. by Georgia C. Butcher, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Jr., Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal by the defendant, Rober Moore, from a verdict and judgment of guilt to the crimes of second degree murder, A.R.S. §§ 13–451 and 452, with a sentence thereon of not less than ten years; and assault with a deadly weapon, A.R.S. §§ 13–241 and 249, with a sentence thereon of not less than five nor more than ten years. The sentences are concurrent.

The issues presented in this case are as follows:

1. Did the trial court correctly allow a first degree murder charge to go to the jury?

2. Was the prosecutor's reference to Miranda warnings reversible error?

3. Was the prosecutor's reference to the escalating crime rate improper?

4. Did the prosecutor improperly suggest that the defense witnesses were lying?

5. Were the instructions to the jury erroneous and were they a comment on the evidence?

6. Was Brady material improperly concealed by the prosecution?

The facts necessary for a determination of this case are as follows. On the afternoon of 15 December 1973, Mrs. Joyce Moore gave her ten year old daughter, Denise, permission to attend a Christmas tree decorating party with a young girl friend Kelly at a neighborhood pub, the Canal Bar. Kelly was the daughter of the managers of the Canal Bar. At about 6:00 p. m., Mrs. Moore who was driving down 7th Street towards her home, saw the Canal Bar and decided to stop and see her daughter and meet Kelly's parents. Mrs. Moore lingered at the Canal Bar for several hours drinking steadily and conversing with male bar patrons who were playing pool.

At about 9:00 p. m. defendant, Mr. Moore, happened to drive by the Canal Bar and saw his wife's automobile parked outside. Mr. Moore, a line detective for the Santa Fe Railway, at this time was finishing his routine patrol of railroad properties located nearby. Defendant Moore entered the bar, took a barstool next to his wife, Joyce, and ordered a beer for her and soft drink for himself. By her own testimony, Joyce admitted to being quite drunk. Mr. Moore attempted to get his wife to leave with him. When Joyce refused, defendant lifted her off the barstool, but her foot was caught on the barstool and she fell to the floor. Defendant picked up his struggling wife and tried to drag her from the bar. Because of her intoxication and defendant's shoving, Joyce tripped over the doorsill. A patron of the bar who was entering the establishment had to raise his arm in self-defense to deflect her flying body. This deflection caused her to land on the ground outside the tavern.

About eight bar patrons then came outside to watch and participate in the domestic "fight." Some of the participants were men with whom Joyce had been drinking. Some of these people offered to fight Robert Moore in between yelling obscenities at him. Other participants were peacemakers such as Jack Jacobs who tried to calm down Joyce and Robert Moore.

Joyce got free of Robert Moore's grasp and returned to a barstool inside the Canal Bar. Determined to take his wife home, Moore went to his automobile and took his detective gun from the car.

Once back in the bar, defendant Moore approached his wife and stuck the gun at her back. Moore said, "Come on, or there'll be trouble." Jack Jacobs stepped up behind Moore and unsuccessfully attempted to "judo chop" Moore's wrist to obtain the gun. Defendant Moore then fired three shots. One of the bullets entered the bar, another wounded Jacobs and the third killed James Dale McGee. Moore left the Canal Bar with his wife and immediately turned himself in to the police.

The jury found the defendant guilty of the crimes of second degree murder, assault with a deadly weapon against Jack Jacobs, and assault with a deadly weapon against Bob Roberts. The court granted defendant's motion to vacate the judgment against him for assault of Roberts and entered judgment on the other counts. From these judgments and denial of the motion for new trial the defendant appeals.

### FIRST DEGREE MURDER INSTRUCTION

The judge instructed the jury on first and second degree murder as well as voluntary and involuntary manslaughter. Appellant argues that it was prejudicial error for the trial court to instruct the jury on first degree murder because there was no evidence of premeditation. We do not agree.

The trial court has a duty to instruct the jury on every grade of offense reasonably supported by evidence. *State v. Dixon,* 107 Ariz. 415, 489 P.2d 225 (1971); *State v. Ramos,* 108 Ariz. 36, 492 P.2d 697 (1972). From a review of the transcript we believe that the evidence reasonably supports the giving of a first degree murder instruction. We have stated:

"To be entitled to an instruction for first degree murder, the State must show, in addition to evidence of an unlawful killing with malice, evidence that the killing was wilful, deliberate and premeditated. (citation omitted) In the instant case, the evidence amply supports the finding of an unlawful killing, and use of a deadly weapon such as a gun, standing alone, is sufficient evidence from which the jury may find malice. (citation omitted)." *State v. Duke,* 110 Ariz. 320, 325, 518 P.2d 570, 575 (1974).

We have also stated that premeditation need not be prolonged and have approved the following jury instruction:

" * * * [t]here need, however, be no appreciable space of time between the intention to kill unlawfully and the act of killing. They may be as instantaneous as the consecutive thoughts of the human mind." *State v. Eisenstein,* 72 Ariz. 320, 333, 235 P.2d 1011, 1020 (1951).

The facts that Moore left the bar, returned to his car, obtained the gun, reentered the bar and then stuck the gun in his wife's back were sufficient facts from which the jury could have found sufficient premeditation and deliberation to support a first degree murder conviction. We find no error in the instruction.

### REFERENCE TO MIRANDA WARNINGS

During cross-examination the following transpired:

"Cross Examination

"By Mr. Chornenky:

"Q At the time you entered the police station, Mr. Moore, you had intended to turn over the gun to the police department, did you not?

**274**

"A I did turn it over.

"Q At the time you entered the police department, Mr. Moore, you had all intentions of turning that gun over to the police, did you not?

"A Yes.

"Q And you are aware of certain Miranda warnings which the police must give you prior to taking a statement from you?

"A Yes, sir, I am very much aware of that.

"Mr. Esser: I don't see the relevancy of Miranda warnings.

"Mr. Chornenky: May it please the Court, may we approach the bench and I can explain to the Court.

*Proceedings at the Bench*

"Mr. Esser: I move for a mistrial.

"Mr. Chornenky: I'm merely trying to establish that he voluntarily turned the gun into the police, so I can get it in evidence at this time.

"Mr. Esser: He is now referring to Miranda warnings before the jury. There is no way of defending and getting a fair trial at this point.

"The Court: I'll deny the motion.

"Mr. Chornenky: I'll strike the last question and ask the jury to disregard it. I'll withdraw it."

■ A prosecutor is prohibited from commenting to a jury on defendant's failure to testify after he has been given his Miranda warnings or inferring that an accused is guilty because he has invoked his Fifth Amendment privilege against self-incrimination. *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The prohibition against evidence of silence after a defendant has been given his Miranda warnings is to exclude evidence that a person has exercised his right under Miranda. Testimony of his silence under these circumstances can be highly prejudi-

cial. That is not the fact situation in the instant case. There was no evidence that the defendant elected to remain silent or refused to cooperate with the police. Most jurors today surely know it is common police practice to inform a suspect of his Miranda rights and the fact that the defendant here, who was voluntarily turning himself in, giving the gun to the police, was in fact read his Miranda rights should come as no surprise. Under the circumstances, this was neither error nor prejudicial.

## RISING CRIME RATE

■ Appellant argues that a mistrial should have been granted when the prosecutor made reference to the rising crime rate in his closing argument to the jury. The county attorney stated:

"We have all heard about the rising crime rate throughout the country. We have heard about the rise in violence. We have read about it. We are sick of it."

This issue has been previously answered by this court in a case wherein the prosecutor commented on the drug problem in the community, and the ability of the jury to do something about this problem. We stated:

"Considering the full statement of the prosecutor there was nothing improper. In *State v. Williams,* 107 Ariz. 262, 485 P.2d 832 (1971) this Court held that reference by the prosecuting attorney in his argument to the prevalence of crime is not improper; further that the prosecuting attorney has a right to call attention to the prevalence of crime (crime rate), to urge the jury to do its duty and uphold the law, and to draw inferences from conditions resulting from the failure to uphold the law." *State v. Jaramillo,* 110 Ariz. 481, 483–484, 520 P.2d 1105, 1107–1108 (1974).

We reaffirm the holding in Jaramillo, supra, and find no error committed by the prosecuting attorney in this case.

## PROSECUTOR'S COMMENTS ON CONTRADICTORY TESTIMONIES

■ On appeal, Moore argues that a mistrial should have been granted since the prosecutor improperly suggested that defense witnesses, in particular Joyce Moore, was lying. The central theme of the State's closing argument was to discredit Robert Moore's claim that he had acted in self-defense. A key portion of the testimony of all the witnesses concerned what verbal and physical attacks Robert Moore was or was not subjected to when Moore re-entered the Canal Bar after the scuffle in the parking lot. In reviewing and analyzing Mrs. Moore's testimony for the jury, the prosecutor stated:

" * * * Exhibit Number 20 was admitted with the express proviso that the lighting conditions were not necessarily the same. Take a look at it—the doorway, the partition, and where the struggle was supposed to have taken place, and the wife testified that she couldn't see any of it, she couldn't see any of the struggle. All she could see was the pool lights. If you recall her testimony, she testified that she was at the front door on her way out, somewhere in this vicinity. When you look at that picture, look at where that door is. The scuffle was going on, according to the testimony of the defendant and I believe Jack Jacobs, somewhere in this area here. She had to see it. If it happened as the defendant claims it happened.

"Each one of you heard Mrs. Moore on that stand all of a sudden, to everyone's surprise, say 'I just can't lie.' Remember that? She couldn't lie about the facts, so she said she couldn't see it. That is easy. That is an easy form of lying: I didn't see anything, I was blind, I couldn't see it."

There was no objection at this point. However, later the following transpired:

"Mr. Esser says the witnesses haven't lied intentionally. The state feels that someone or a number of people have lied and perjured themselves. You can take—

"Mr. Esser: I object to that comment. It is improper. I move for a mistrial. Mr. Chornenky knows he can't accuse any witness of perjury.

"Mr. Chornenky: I have not accused any one witness, your Honor, please.

"The Court: I will deny the motion for a mistrial. The jury will disregard that last statement."

■ In summation an attorney may comment and draw reasonable inferences from the evidence so long as there are facts to support such statements. *State v. Gonzales,* 105 Ariz. 434, 466 P.2d 388 (1970), affirmed after remand on other grounds, 106 Ariz. 303, 475 P.2d 485 (1970); *State v. King,* 110 Ariz. 36, 514 P.2d 1032 (1973).

In determining whether a prosecutor's remarks require reversal we have stated:

"The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks." *Sullivan v. State,* 47 Ariz. 224, 238, 55 P.2d 312, 317 (1936).

Although we do not approve of the prosecutor's language, we do not find it requires reversal.

### INSTRUCTIONS

Appellant objects to three of the instructions given to the jury as either being a comment on the evidence prohibited by Art. 6, § 27 of the Arizona Constitution or being a misstatement of the law.

■ The defendant contended that he acted in self-defense. During the trial he claimed that he was assaulted by the victim Jacobs with a pool cue. All of the many witnesses who were present at the fight

testified that Jacobs struck Moore on the wrist with his hand or fist and not a pool cue. The court instructed the jury completely and extensively as to the matter of self-defense and the jury was not misled as to the right of a person to defend himself, even one armed with a gun as in the case of defendant. Over defendant's objections the following instruction was given:

"An assault with the fists does not justify the person being assaulted in using a deadly weapon in self-defense unless that person believes and a reasonable person in the same or similar circumstances would believe that the assault is likely to inflict great bodily injury upon him."

Moore argues that by using the phrase "assault with the fists," the judge accepted as true a disputed fact and that this was an improper comment on the evidence by the judge forbidden by Art. 6, § 27 of the Arizona Constitution. He contends that the judge merely should have said "assault" rather than "assault with the fists."

We would have preferred that the instruction had been clearer in this regard, possibly stating, "If you find that the defendant was assaulted with fists then you are instructed as follows." Still we do not believe that when read with the rest of the more than adequate instruction regarding the defendant's right to self-defense that the jury could have inferred from this instruction that the judge believed that the defendant was not hit with a pool cue as defendant contended.

■ The second objected to instruction read as follows:

"Self-defense is not available to one who was at fault in provoking the difficulty that resulted in the homicide. A person cannot set up in his own defense a necessity which he brought upon himself."

Appellant argues that this statement is too broad and vague. We disagree. This court has stated that the privilege of self-defense is not available to one who is at fault in provoking an encounter or difficulty that results in a homicide. *State v.*

*Randall,* 94 Ariz. 417, 385 P.2d 709 (1963). We find no error.

■ The final instruction read:

"You are instructed that the fact that the defendant's intent to shoot the deceased was formed during a struggle, if that has been established, does not preclude deliberation and premeditation necessary to support a conviction for murder in the first degree."

Defendant objects to this instruction as a comment on the evidence. We disagree. Although there is a question whether or not the defendant specifically raised this objection at the time, *State v. Michael,* 107 Ariz. 126, 483 P.2d 541 (1971); *Musgrave v. Githens,* 80 Ariz. 188, 294 P.2d 674 (1956); Rule 51, Rules of Civil Procedure, 16 A.R.S., we nevertheless do not find the instruction a comment on the evidence even if it had been timely raised. The instruction, couched in the conditional terms "if that (intent to shoot) has been established," is unobjectionable. *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964); *State v. Vann,* 11 Ariz.App. 180, 463 P.2d 75 (1970); *State v. Clayton,* 109 Ariz. 587, 514 P.2d 720 (1973).

## BRADY MATERIAL

Appellant next contends that a material defense witness, Mr. Ball, was concealed by the prosecution. Mr. Ball and Mr. Moore shared jail cells in the period immediately after Moore was arrested. It is appellant's position that Ball could have supported his claim of self-defense by testifying that Ball had seen how battered and injured Moore was after the barroom brawl. Appellant argues that since evidence was unconstitutionally suppressed by the State, his motion to vacate judgment should have been granted. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

At the hearing on the motion for new trial, the following transpired:

"MR. GERHARDT: * * *

If the court would like, I would call Mr. Moore and he may testify to these facts.

"THE COURT: I will take your avowal as to what Mr. Moore says, unless the State wants to cross-examine.

"MR. BRADEN: I see no point in going into it again, as far as the defendant testifying what he was aware of prior to trial and his inability to contact the particular witness.

"THE COURT: Anything further?

"MR. GERHARDT: No, your Honor.

"THE COURT: I am going to deny the motions. I find it is promptly filed, but I don't believe that grounds (1) and (2) of subsection e have been met by the motion, that is, the probability that if such facts were introduced it would change the verdict, and the diligence which would have been required to discover this evidence at trial."

This court has stated:

"We have recognized that the state is duty bound to disclose evidence which may be favorable to the defense and which may not be reasonably known to or discoverable by the defense whether or not it is requested. (citations omitted)" *State v. Salcido,* 109 Ariz. 380, 382, 509 P.2d 1027, 1029 (1973).

The existence of this witness and his likely testimony were known and discoverable by the defendant acting on his own initiative with a minumum amount of diligence. The prosecutor did interview Ball with the thought that Ball might be called as a witness. The fact that Ball was not called does not mean that the prosecutor secreted Ball or suppressed his testimony. The record before us shows no attempt by defendant to locate Ball nor an attempt by the county attorney to prevent this defendant from locating him and calling him as a witness. We find no error.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.