573 P.2d 917

**STATE of Arizona, Appellee,**

v.

**Jack Luther MANN, Appellant.**

**No. 1 CA–CR 2455.**

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 2, 1977.

Rehearing Denied Dec. 29, 1977.

Review Denied Jan. 24, 1978.

Bruce E. Babbitt, Atty. Gen. by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Westover, Choules, Shadle & Bowen, P. C. by Bruce A. Jensen, Yuma, for appellant.

**518**

## OPINION

HAIRE, Judge.

Appellant, Jack Luther Mann, was convicted by a jury of Possession of Marijuana for Sale, Transportation of Marijuana, and Arson in the Third Degree.

The facts from which this case arose may be briefly summarized. On July 17, 1976, two deputies of the Yuma County Sheriff's Office investigated the downing of a light aircraft. When the officers arrived at the scene of the mishap they found a rapidly burning aircraft which had been piloted by the appellant. Inside the plane, and also burning, were several brick-shaped objects. The officers determined that the burning objects inside the plane were bricks of marijuana. Thereupon, appellant was arrested and advised of his *Miranda* rights.

Before trial, it was stipulated by the defense and prosecution that all statements by appellant to police officers after he had been advised of his rights would be suppressed.

■ In support of his contention that he should be granted a new trial, appellant raises two issues. Initially, appellant argues that the state solicited his suppressed statements through the testimony of the state's witness, Deputy Sheriff Jack Harold. Appellant insists this constituted reversible error.

The testimony complained of by appellant occurred when the state was examining Deputy Harold, one of the arresting officers:

"Q. What did you do after you arrived there [at the downed aircraft]?

"A. As I drove by the plane I told Deputy Wahlgren to go over and see if he could get some of it [the plane's cargo] for identification purposes. He went to the airplane and I approached Bovee and Mr. Mann and I asked Mr. Mann if he was the pilot and he said yes.

"Q. Did Wes Wahlgren have a camera with him?

"A. Yes, he did.

"Q. Do you know if he was taking pictures?

"A. He did afterwards, yes.

"Q. What did Wes do as you were talking to Mr. Mann?

"A. He brought back a handful of what I determined was marijuana.

"Q. Did you notice where he got it from?

"A. He got it out of the airplane.

"Q. What did you do after you recognized that as marijuana?

"A. I placed Mr. Mann under arrest and read him his rights.

"Q. And then what occurred?

"A. He said he didn't want—

MR. JENSEN: I object to anything that follows after—

THE COURT: Yes, the objection will be sustained.

[MR. ROBERSON CONTINUING:]

"Q. What were the actions of Deputy Wahlgren and yourself after you placed this man under arrest?"

There is no indication that the state attempted to place before the jury any of appellant's suppressed statements. The question "And then what occurred?" was completely innocent. If there is any error, it must lie in the witness's answer: "He said he didn't want. . . ."

Appellant contends that the jury probably finished the witness's incomplete sentence to the effect that appellant didn't want to talk to law enforcement officers. However, the witness's truncated statement could not reasonably be construed as a recitation of any of appellant's suppressed statements, nor as a reference to appellant's post-arrest silence.

The case of *State v. Moore*, 112 Ariz. 271, 540 P.2d 1252 (1975) is instructive. There, in cross-examining the defendant, the prosecution made reference to the defendant being aware of *Miranda* rights. The defendant moved for a mistrial claiming that this was an impermissible reference to his post-arrest silence. The court found no error, since there was no evidence that the defendant was silent or that he refused to cooperate with the police. Moreover, *Mi-*

*randa* warnings are so well known that the jury would be unlikely to view the prosecution's statement as reflecting adversely upon the defendant's credibility.

■ We feel the correct rule can also be drawn from those cases in which the prosecutor comments to the jury about the defendant's failure to produce evidence, but the defendant construes the statement as a comment on his failure to take the stand. In these situations the prosecutor's comments are ambiguous, and the test of error is this:

> "Error is committed only if the prosecutor's statement will call the jury's attention to the fact that the defendant has not testified in his own behalf." *State v. Galbraith*, 114 Ariz. 174, 178, 559 P.2d 1089, 1093 (App.1976), *accord, State v. Davis*, 115 Ariz. 3, 562 P.2d 1370 (App. 1977).

In the instant case, since neither the question by the prosecutor nor the answer by the witness tended to focus the jury's attention on appellant's alleged exercise of his right to silence, we find no error.

We also observe that appellant's trial counsel did not find it necessary to ask for a mistrial or to move that the testimony he found objectionable be stricken. In *State v. Holmes*, 110 Ariz. 494, 520 P.2d 1118 (1974), the defendant objected to the prosecutor's comments concerning the defendant's post-arrest silence and his failure to testify at the preliminary hearing, which objection was sustained. But the court found that the defendant had waived his right to appeal by failing to move for a mistrial, or to strike the offending comments.

As a second issue, appellant contends that the trial court abused its discretion in denying his motion for a new trial, based upon newly discovered evidence.

Among appellant's possessions was an aerial map of a portion of terrain just south of the Mexican border. This map was admitted into evidence as Exhibit 8. On this map were three handwritten "X's".

At the trial, Angel Chavez, a sergeant in the Yuma County Sheriff's Department, testified as follows:

"Q. Angel, while you were looking over State's Exhibit No. 8 did you observe anything on this map?

"A. Yes, I did.

"Q. And what did you observe?

"A. On this map, just south of the international boundary, approximately 70 miles from Yuma, I observed some marking on this map, and these markings, these 3 "X's" on here, they are within the close proximity of 3 airstrips in that area that through my experience I know are used for smuggling purposes."

Sergeant Chavez also testified that he was an experienced pilot. Although these "airstrips" were simply cleared-off sections of desert, Sergeant Chavez testified that he had personally been on these airstrips, and had found gasoline storage tanks there.

Appellant testified that two of the "X's" represented roadside cafes and the third "X" a microwave tower. He had placed the "X's" on the map so that his brother, a rockhound, could locate some interesting rock formations. Appellant also testified that it would be impossible to land an aircraft near the "X's" unless one landed on the highway.

After his conviction, appellant moved for a new trial pursuant to Rule 24.1 of the Arizona Rules of Criminal Procedure. At the hearing on appellant's motion, appellant produced Mr. Harold Spencer, an aerial photographer who had been hired to fly over the areas represented by the three "X's" and examine the terrain. Mr. Spencer testified that he could find no safe places to land a light plane within close proximity to the three "X's". The state called Sergeant Chavez. Rather than recanting his testimony, Sergeant Chavez reiterated that the three "X's" were in the vicinity of landing sites. He elaborated on his trial testimony, and stated that he had personally landed on two of the airstrips. Furthermore, he had seen the tracks of others who had landed on certain of those airstrips.

Initially we note that appellant's motion more properly might be termed a Rule 32 motion for post-conviction relief. Insofar

as appellant claimed that he did not receive a fair and impartial trial because he lacked evidence with which to contradict the testimony of Sergeant Chavez, his motion is essentially based upon newly discovered facts. Rule 32.1(e), Arizona Rules of Criminal Procedure, 17 A.R.S., states the appropriate standards for granting relief on the basis of new evidence:

"Subject to the limitations of Rule 32.2, any person who has been convicted of, or sentenced for, a criminal offense may, without payment of any fee, institute a proceeding to secure appropriate relief on the ground or grounds that:

\* \* \* \* \* \*

"e. Newly-discovered material facts exist, which the court, after considering
(1) The probability that such facts, if introduced would have changed the verdict, finding or sentence;
(2) The diligence which would have been required to discover and produce the evidence at trial;
(3) The promptness with which the petitioner has commenced a proceeding after discovery of such facts,

may require that the conviction or sentence be vacated;"

It is not enough that newly offered evidence merely bolsters, impeaches or contradicts the testimony given at trial; it must appear probable that admission of the new evidence would have changed the result of the trial. *State v. Morrow*, 111 Ariz. 268, 528 P.2d 612 (1974).[1] We do not think it probable that the contradictory testimony of Mr. Spencer would have changed the verdict.

The court must also consider whether the defendant was diligent in attempting to develop the new evidence prior to trial. *E.g., State v. Thornburg*, 111 Ariz. 254, 527 P.2d 762 (1974); *State v. Morrow, supra*. In the instant case, appellant knew the substance of Sergeant Chavez's testimony prior to trial,[2] and there is no apparent reason why appellant could not have secured the testimony of an aerial photographer for the trial.

Whether to grant a new trial is a decision within the sound discretion of the trial judge, and we will not reverse that decision unless the appellant can affirmatively show that the trial judge abused his discretion. *State v. Scott*, 113 Ariz. 423, 555 P.2d 1117 (1976). Even where a witness states that his trial testimony was false, a defendant is not automatically entitled to a new trial. *Id.* In the present case, we can find no abuse of discretion by the trial court.

The conviction and sentence are affirmed.

NELSON, P. J., and FROEB, C. J., concur.

---

1. *State v. Morrow* was decided under old Rule 310 of the Arizona Rules of Criminal Procedure. Under the old rule it was mandatory for the defendant to show a probability of changing the verdict and the exercise of reasonable diligence. The present Rule 32.1(e) commands the court merely to consider those elements.

2. It is not clear how far in advance of trial defense counsel learned of Sgt. Chavez's testimony. In any event, the appellant could have discovered the substance of Sgt. Chavez's testimony pursuant to Discovery Rules 15.1 and 15.3, Arizona Rules of Criminal Procedure, 17 A.R.S.