Bobby C. BARNES, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5591.

Supreme Court of Wyoming.

Feb. 9, 1982.

Michael H. Schilling, Appellate Counsel,
Wyoming Public Defender Program, Lara-
mie, for appellant.

Steven F. Freudenthal, Atty. Gen., Ger-
ald A. Stack, Deputy Atty. Gen., Criminal
Division, Allen C. Johnson, Senior Asst.
Atty. Gen., and Terry J. Harris, Legal In-
tern (argued), for appellee.

Before ROSE, C. J., and RAPER, THOM-
AS, ROONEY and BROWN, JJ.

RAPER, Justice.

Appellant was convicted of grand larceny as defined in § 6–7–301, W.S.1977.[1] He appeals from the judgment and sentence entered against him and makes three charges of error. First, he argues that the district court erred in denying his motion to suppress an identification of him made in court. His contention is that improper procedures were used to gain a pretrial identification and that, thus, the witness's in-court identification was tainted. Appellant's second challenge concerns several statements made during the prosecutor's closing argument. Here the argument is made that the prosecutor's references to appellant as a liar and a thief constituted plain error and denied appellant a fair trial. Finally, appellant attacks the district court's failure to dismiss the information filed against him in this case. He claims that in this state the prosecution of an offense by information is barred by the Wyoming Constitution.

We will affirm.

On April 23, 1981, the appellant, while in Brighton, Colorado, met an individual by the name of Ray Snyder. After appellant discovered that Snyder was going to Laramie, Wyoming, he offered to pay some of the driving expenses if Snyder would take him along. Snyder agreed to this arrangement. After arriving in Laramie, appellant purchased approximately fifty-five dollars worth of groceries which he took to Snyder's residence. At that location he, Snyder, and Snyder's roommate James Sparks, spent an evening eating and drinking.

Appellant returned to Snyder's residence on April 24, 1981. He and Snyder resumed drinking while they chatted for close to an hour. Appellant mentioned that he was planning to have a party at another residence in Laramie. On the witness stand he indicated that Snyder volunteered to let him use the stereo equipment located in Snyder's house; however, an objection that

this was hearsay was sustained. Snyder was not available as a witness nor present at the trial.

On April 25, 1981, appellant returned to the Snyder residence and found no one home. He then sought the assistance of a neighbor, Joseph Fuhrman, in moving the stereo equipment to another location. After helping appellant, Fuhrman reported the occurrence to the police.

When James Sparks, Snyder's roommate, returned home that day, he discovered that certain items of his personal property were missing. Sparks then tracked down appellant in a local bar and found him in possession of some of the missing items. After appellant returned these items, Sparks flagged down a police officer and reported the incident. Shortly thereafter, appellant was arrested and transported to the police station.

Meanwhile, Fuhrman was contacted and asked to identify various items he had helped appellant move. He was also asked for a description of appellant, but before completing it the police officer indicated that he thought he knew who it was and began to suggest to Fuhrman further details of appellant's description. Fuhrman was taken to the police station and asked to view a video monitor of the booking room. At that time appellant and two police officers were the only three occupants of the room. Fuhrman was then asked if that was the guy; he indicated that it was.

An information was filed against appellant charging him with grand larceny. A motion to dismiss the information on the basis that it was unconstitutional to prosecute on an information was denied. A motion to suppress the pretrial identification was also denied by the trial judge following a hearing.

The case proceeded to trial on July 14, 1981. Over objection, Fuhrman was allowed to make an in-court identification of

---

1. Section 6–7–301, W.S.1977 provides:
   "Whoever feloniously steals, takes and carries, leads or drives away the personal goods of another of the value of one hundred dollars ($100.00) or upwards, is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than ten (10) years."

appellant. After the case was submitted to a jury on the morning of July 15, 1981, that afternoon a verdict of guilty was returned. Judgment and sentence was entered on July 27, 1981.

Appellant's first issue concerns Fuhrman's in-court identification. Appellant argues that the district court erred in denying his motion to suppress the identification on the ground that it was tainted by the police procedures used to get a pretrial identification. However, what, if any, error which occurred must be considered harmless beyond a reasonable doubt in this case. After Fuhrman's identification, appellant testified on direct examination as follows:

> "Q. Yes, sir. Yes, sir. And what did you do with that stuff?
> "A. I took it to 113 South First, I had Mr. Fuhrman do this, everything Mr. Fuhrman said concerning that was a true statement. I did go across the street and get him."

Appellant conceded that he was the person who Fuhrman had assisted in moving the items in question. In light of such an admission, we cannot see that appellant could have in any way been prejudiced by Fuhrman's identification. At that point he waived any objection he may have had to the identification procedure followed at the police station. Even if the evidence at the close of the State's case was insufficient because of a tainted identification when the defendant proceeded with his evidence, his guilt or innocence will be decided by the evidence, as a whole. *Newell v. State,* Wyo., 548 P.2d 8 (1976); *Neel v. State,* Wyo., 452 P.2d 203 (1969), reh. denied 454 P.2d 241 (1969). Thus we need not consider the police identification procedures used in this case.

Appellant's second issue involves the prosecutor's closing arguments to the jury. Appellant contends that, though he did not object at the time, the prosecutor's comments were so egregious as to constitute plain error. In particular, appellant points out the following comments during the prosecutor's closing:

> " * * * Now, Mr. Barnes told you yesterday, 'Well, I figured it was all right.' You know, he kind of met Ray Sparks, he rode up from Colorado with him—excuse me, Ray Snyder, he rode up from Colorado with him. He had been at the house twice. From that he would have you believe that he assumed, 'Well, I'll just go in there and borrow all this stuff and take it downtown and we'll have a party.' I submit to you that simply is not true. "It's—in the first place, *it's not a reasonable belief for him to have,* based on those circumstances, and in the second place, it's *incredible that anybody would ask you people to believe that.  * * * "*

Appellant also notes the following in the prosecutor's rebuttal closing:

> "I submit to you that Bobby Barnes has been a thief, is a thief. He stole these items and not only that, I submit that he's a liar and we have shown everything necessary to prove that he's a thief and that you should convict him of the crime of grand larceny, as he stands charged."

We have recently discussed the limits placed upon prosecutors in making closing arguments in *Browder v. State,* Wyo., 639 P.2d 889 (1982). In particular it is improper for prosecutors to either vouch for their own credibility or to testify as to their own personal belief or opinion of a matter in controversy.

The *Browder* case also involved the situation where the defense counsel failed to object to the prosecutor's comments during the trial. As we said there, the prosecutor's misconduct must be plain error, that is, it must not only be clear on the record that an unequivocal rule of law was breached but also the violation must be serious enough to undermine the fairness of appellant's trial. As we pointed out in *Browder,* the occasional use of "I" in closing argument may not be objectionable. Here, the prosecutor's remarks were no more than comments on the state of the evidence. *Mayer v. State,* Wyo., 618 P.2d 127 (1980). While calling a defendant a thief and a liar may not be in good taste, the evidence discloses a reasona-

ble inference that he was not truthful in his testimony and he was in fact a thief.

■ We hold the argument of counsel in this case was not as blatant, repetitious, or damaging to the fairness of appellant's trial as in *Browder*. It is really a question of degree, and after reviewing the record in this case we hold that the prosecutor's comments did not constitute error.

Appellant's final argument is that the district court erred in denying appellant's motion to dismiss the information on grounds that the prosecution of the offense by information was improper. He contends this is required by both the United States Constitution and the Wyoming Constitution.

■ He grounds his U. S. constitutional argument upon the language found in the Fifth Amendment to the effect that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *." However, the United States Supreme Court has consistently maintained that this does not apply to the states. *Lem Woon v. Oregon*, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1913); *Bolln v. Nebraska*, 176 U.S. 83, 20 S.Ct. 287, 44 L.Ed. 382 (1900); *Hodgson v. Vermont*, 168 U.S. 262, 18 S.Ct. 80, 42 L.Ed. 461 (1897); *McNulty v. California*, 149 U.S. 645, 13 S.Ct. 959, 37 L.Ed. 882 (1893); *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 4 S.Ct. 292, 28 L.Ed. 232 (1884).

■ His Wyoming constitutional argument is premised upon Article 1, § 13, which provides: "Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by indictment * * *." However, the Wyoming legislature provided otherwise in Chapter 59, § 1 of the Session Laws of 1890–1891 which states:

"*Section 1.* All crimes, misdemeanors and offences may be prosecuted in the court having jurisdiction thereof, either by indictment as hereinafter provided or by information."

This court recognized that the legislature's action was constitutionally permissible in *In re Boulter*, 5 Wyo. 329, 40 P. 520 (1895). Thus, the "[u]ntil otherwise provided by law" language of Art. 1, § 13 had been satisfied and the indictment requirement ceased to operate. The fact that the legislative enactment has been replaced by court rule [2] does not alter the situation. A rule of this court has the force and effect of law and is as "otherwise provided by law." Section 5–2–116, W.S.1977:

"Upon the adoption of any rule or form the supreme court shall enter it in its proceedings and shall fix the date upon which such rule or form shall become effective but such effective date shall be at least sixty (60) days after notice thereof has been published by the supreme court in such publication as it may designate. From and after the effective date of any such rule or form all laws in conflict therewith shall be of no further force or effect."

*State ex rel. Frederick v. District Court of Fifth Judicial District*, Wyo., 399 P.2d 583, 12 A.L.R.3d 1 (1965), fn. 1, recognizes the inherent rights of courts to prescribe rules. See also Rule 56, W.R.Cr.P.[3] Prosecution in this state may properly be either by information or indictment.

Affirmed.

ROSE, Chief Justice, specially concurring.

In this appeal we are once again faced with a question concerning the misconduct

---

2. Rule 9, W.R.Cr.P. provides in pertinent part:
"All prosecutions shall be by indictment or information and carried on in the name and by the authority of the state of Wyoming, and shall conclude 'against the peace and dignity of the state of Wyoming.' * * *"

3. Rule 56, W.R.Cr.P.:
"From and after the effective date of these rules, the sections of the Wyoming Statutes,

1957, as amended, hereinafter enumerated, shall be superseded, and such statutes and all other laws in conflict with these rules shall be of no further force or effect:
  *  *  *  *  *  *
"7–118 through 7–125
[Providing for prosecution by information. Now §§ 7–6–101 through 7–6–108, W.S. 1977.] * * *"

of a prosecutor in delivering a closing argument to the jury. Here, during the rebuttal closing argument, the prosecutor made the following assertions:

"However, I further submit that the story he told here yesterday, under oath, is not correct and that it does not reflect that memory. *I submit that Mr. Barnes is a liar.* [Emphasis added.]

"I submit to you that Bobby Barnes has been a thief, *is a thief.* He stole these items and not only that, *I submit that he's a liar* and we have shown everything necessary to prove that he's a thief * *." (Emphasis added.)

The majority of the court have concluded that these outlandish utterances do not constitute error. Keeping in mind our recent decision in *Browder v. State*, Wyo., 639 P.2d 889, (1982) and with a nod to the doctrine of common decency, I am unable to see how the comments occurring in this case were not just as erroneous as were those which we considered in *Browder.* I must therefore disagree with the majority's opinion in this respect.

In *Browder*, we identified the rules applicable to the prosecutor's closing arguments. We said that it is impermissible for prosecutors to place their own personal credibility before the jury as a vehicle for bringing about the conviction of a criminal defendant. 639 P.2d at 895. We also called attention to the well-established rule that says it is misconduct for a prosecutor to express his or her personal opinion as to the credibility of a witness or the guilt of the defendant. Id., citing from ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.8 (1980). This standard regarding the impermissibility of a prosecutor's interjection of his personal opinion has been reiterated many times. See: *State v. Garcia*, 100 Idaho 108, 594 P.2d 146 (1979); *United States v. Rios*, 611 F.2d 1335 (10th Cir. 1979); *State v. Moore*, 112 Ariz. 271, 540 P.2d 1252 (1975); *Robertson v. State*, Okl.Cr., 521 P.2d 1401 (1974). It is hornbook law. It is the kind of basic concept with which all law school students are familiar.

In the case at hand, the prosecutor's references to the accused as a "liar" and a "thief" clearly fall into the realm of impermissible comment. As we stated in *State v. Musgrove*, 178 Mont. 162, 582 P.2d 1246, 1253 (1978):

"It is enough to say that in most instances, it is highly improper for an attorney in final argument to characterize the testimony of a witness as lies or the party or a witness himself as a liar."

By expressing his opinion in these terms, the prosecutor took it upon himself to inform the jury that he had no doubt about appellant's guilt and appellant's lack of veracity. What a prosecutor thinks about a defendant is, of course, not evidence in any criminal case. I consider such comments to be error. *Preston v. State*, Okl.Cr., 491 P.2d 779 (1971). By their opinion, the majority are saying to the prosecutors of Wyoming that impermissible arguments will be regarded as error depending upon the number of times they misbehave. It seems that the only distinguishing feature between the case at bar and *Browder*, supra, arises from the fact that in *Browder* the prosecutor committed one too many instances of misconduct, while in the present case the prosecutor's comments were limited to a degree which permits this court to overlook or ignore—or sanction—their impropriety. For me, the nature of the comment must be the deciding factor in determining whether error occurred, and any considerations involving the number of times impermissible comments were made go to the issue of plain or prejudicial error. It was said in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and *whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall*

not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." (Emphasis added.) 295 U.S. at 88, 55 S.Ct. at 633.

This passage says to prosecutors everywhere that it is their duty to seek justice and in doing so to refrain from improper methods. See: *Browder v. State*, supra, 639 P.2d at 894.[1] Remembering, the nature of the prosecutor's rule as identified in *Berger v. U. S.*, supra, I suggest that it is incumbent upon this court to say to prosecutors everywhere that unethical, impermissible comments will not and cannot be tolerated. With these admonitions in mind, I must conclude that error was committed in this case. I must conclude that the majority's refusal to so find is a grievous mistake. To sanction a prosecutor's conduct consisting of offering his personal opinion as to the accused's guilt and lack of veracity is to say that this court approves a scale of values which places winning above the search for truth and justice. This we surely should not do.

The final inquiry in this appeal focuses on whether or not the prosecutorial misconduct amounted to plain error.

This court has, on numerous occasions, outlined the requirements for applying the plain-error rule. In determining whether plain error occurred, the complaining party must show a transgression of a clear and unequivocal rule of law, which occurred in a clear and obvious way and which adversely affected a substantial right. *Jones v. State*, Wyo., 580 P.2d 1150, 1153 (1978), and *Hampton v. State*, Wyo., 558 P.2d 504 (1977). Our past decisions indicate that this court has determined the propriety of applying the plain-error rule in appeals where

prosecutorial misconduct is alleged. See: *Browder v. State*, supra; *Jones v. State*, supra; *State v. Spears*, 76 Wyo. 82, 300 P.2d 551 (1956). In the case at bar, there was no objection made to the prosecutor's remarks. We have said in other decisions that failure to object is generally considered a waiver unless the claimed misconduct is so flagrant as to pose no reasonable doubt that prejudice occurred. *Jones v. State*, supra, 580 P.2d at 1153.

Applying the above standards, I believe appellant has shown that a clear rule of law was transgressed by the prosecution and that the transgression occurred in a clear and unequivocal way. The transcript reflects the impermissible interjection of personal opinion by the prosecutor, which is a violation of applicable standards and rules of law pertaining to such matters. The appellant then claims that the prosecutor's actions violated his rights to a fair trial. The right to fair trial is, of course, a substantive one, but I cannot say in this case that the comment by the prosecutor materially prejudiced the appellant. Although the prosecutor's comment was absolutely improper, he did inform the jury before the start of his argument that they were not to consider anything he said as evidence, and, furthermore, the objectionable comments were uttered but one time. *State v. Garcia*, supra, *State v. McDaniel*, 228 Kan. 172, 612 P.2d 1231 (1980). Most importantly the evidence of guilt in this case was strong—indeed overwhelming—and, although a question arose concerning appellant's intent to steal, ample evidence was presented upon which the jury could, should and did reach its verdict of guilty. Therefore, I am convinced that appellant received a fair trial and was not convicted as a result of the prosecutor's remarks.

I come to the hard conclusion that appellant's conviction should be affirmed, and I reach this result only because the erroneous comments made by the prosecution did not

---

1. We have reiterated this duty on other occasions: *Jones v. State*, Wyo., 580 P.2d 1150 (1978); *Valerio v. State*, Wyo., 527 P.2d 154, 157 (1974).

rise to the level of plain reversible error since the evidence of guilt was so great.[2]

Even so, I feel strongly about the business of prosecutorial misconduct and therefore I file this separate concurring opinion in the fond and abiding hope that prosecutors will one day come to the understanding that criminal justice is not a manhunt. It is, instead, a search for truth and justice—a search in which the prosecutor has the duty to look for and identify the innocence of the accused with the same verve and vigor that he seeks out his guilt. The true professional prosecutor is the man or woman who can vigorously undertake the criminal inquiry with the quiet and rewarding sense of having properly discharged the people's business. Without regard to whether or not the accused will finally have gained or lost his freedom.

THOMAS, Justice, specially concurring.

I agree that Barnes' conviction must be affirmed. I also am in full accord with the majority opinion concerning the identification testimony and the propriety of charging by information.

I would treat differently with the claim of prosecutorial error. Appellant did not object to the prosecutor's comments at the time they were made. He therefore seeks to induce this court to review the matter of prosecutorial misconduct under the plain-error doctrine. The conclusion of the majority of the court is that the argument of the prosecuting attorney was not damaging to the fairness of the appellant's trial. In his concurring opinion, Chief Justice Rose concludes that the comments made by the prosecutor did not rise to the level of plain reversible error. This claim of error, therefore, should not be considered.

It is my position that if plain error is not present, then proper judicial restraint demands that we not examine the claim of error as to its substance. I therefore do not agree with either the majority opinion or the concurring opinion of Chief Justice Rose insofar as there is encompassed a discussion

of the propriety of the prosecutor's comments. If the claim of error is not reviewable under the plain-error doctrine, and I agree that it is not, then we should ignore that claim of error and not treat with its substance in our disposition. *Brown v. State*, Wyo., 581 P.2d 189 (1978).

---

2. I would add that, similar to the conclusion reached in *Jones v. State*, supra, the prosecutor in this case came perilously close to committing grievous reversible error.